724 A.2d 22

Jerry BLEVINS

v.

BALTIMORE COUNTY, Maryland.

Mary E. Wills

v.

Baltimore County, Maryland.

No. 69, Sept. Term, 1998.

Court of Appeals of Maryland.

Feb. 11, 1999.

Jeff Horowitz (Michael Marshall, Schlachman, Belsky & Weiner, on brief), Baltimore; Hal C.B. Clagett, III, Upper Marlboro (Patricia G. Adams, Serio, Tansey & Adams, Riverdale), all on brief, for petitioners.

Michael G. Comeau, Assistant County Attorney (Virginia W. Barnhart, County Attorney, on brief), Towson, for respondent.

P. Matthew Darby, Albertini & Darby, L.L.P., Baltimore, amicus curiae for Maryland Trial Lawyers Association.

Phillip F. Scheibe, County Attorney, Kim Carne, Asst. County Attorney, Annapolis, for Anne Arundel County.

Otho M. Thompson, City Solicitor, Stanley C. Rogosin, Asst. City Solicitor, Baltimore, for Baltimore City.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

WILNER, Judge.

These two cases, which we consolidated for argument, involve the construction of Maryland Code, § 9–610(a) of the Labor and Employment Article, which is part of the Workers' Compensation Law. That section provides, in relevant part, that if a law, regulation, or policy provides "a benefit to a covered employee of a governmental unit ... that is subject to this title ... payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer ... for payment of benefits under the title." If the alternative benefit equals or exceeds the workers' compensation benefit otherwise payable, the set-off is complete, and the employer's obligation to pay the workers' compensation benefit is fully discharged. If the workers' compensation benefit exceeds the

alternative benefit, the employer must pay the difference, as determined by the Workers' Compensation Commission.

■■■ In *Blevins*, the issue is whether the set-off applies to workers' compensation benefits awarded *after* a county employee retired and began receiving disability retirement benefits pursuant to the county's employee retirement plan but for a period *preceding* the effective date of the employee's retirement. In *Wills*, the substantive issue is whether the set-off applies with respect to ordinary retirement benefits, as opposed to disability retirement benefits, paid to a county employee following her retirement. *Wills* presents a procedural issue as well. In each case, the Court of Special Appeals concluded that the set-off applied. *Wills v. Baltimore County*, 120 Md.App. 281, 707 A.2d 108 (1998). We disagree and shall reverse.

### Blevins

Jerry Blevins was a colonel in the Baltimore County Police Department. On January 21, 1994, he suffered a work-related accidental injury when he fell on a patch of ice on the police headquarters parking lot. Though sustaining injuries to his neck, back, and shoulder, he continued to work full time in his administrative position and encountered no wage loss. At some point, he applied for accidental disability retirement benefits from the county employees' retirement system. His application was approved, and, effective November 16, 1995, he retired and began receiving the disability retirement benefits.

Subsequent to his retirement, Colonel Blevins filed for workers' compensation benefits. In an order entered on February 23, 1996, the Workers' Compensation Commission declined to award any benefits for temporary total disability, on the ground that there was "[n]o compensable lost time," but it did award permanent partial disability benefits, based on a 20% industrial loss of use of the body by reason of the neck and back injuries, in the amount of $170 per week. The Commission's order specified that the weekly benefit be paid

for the period of January 22, 1994 through November 16, 1995 and provided that "thereafter any permanent partial disability due and payable is offset by claimant's weekly pension benefits of $1,038.25."

The county sought judicial review of the Commission's order, contending that the entire award was offset by the pension benefits. Because it had already paid, in a lump sum, the 91 weeks of benefits ordered by the Commission, the county sought a credit for that amount against the disability retirement benefits payable in the future.[1] The Circuit Court for Baltimore County found merit in the county's position and granted its motion for summary judgment, finding that, if the award were allowed, Blevins "will collect twice." Relying on *Frank v. Baltimore County*, 284 Md. 655, 399 A.2d 250 (1979), which it found controlling, the Court of Special Appeals affirmed.

*Frank* also involved a Baltimore County police officer who, in 1975, suffered an accidental injury in the line of duty. Like Col. Blevins, he continued to receive his full salary from the county, although, unlike Blevins, Lt. Frank did lose some time from work due to his injury. On February 6, 1976, he retired with a work-related disability and began receiving disability retirement benefits in the amount of $841/month. Upon his retirement, Lt. Frank applied for workers' compensation benefits, seeking payment for a permanent partial disability. In January, 1977, the Commission found that he had sustained a 20% industrial loss of use of his body, 15% of the disability being attributable to the 1975 accident, and it awarded him benefits in the amount of $54/week, commencing from the date of his retirement. It found as well, however, that those benefits were fully offset by the higher retirement benefits Lt.

---

1. The question has not been raised in this Court whether the county is entitled to a credit against disability retirement benefits payable under the retirement plan for compensation benefits paid pursuant to an award, even if, on judicial review, a court determines that the award was erroneous. The only issue before us is whether the retirement benefits may be set off against compensation benefits, not the reverse.

Frank was receiving, a determination sustained, on judicial review, by the circuit court.

Noting that the statute, then codified as Maryland Code, Article 101, § 33, afforded a credit only for a benefit "furnished" or "provided" by the employer, Frank argued on appeal that, because the pension plan at issue was funded through contributions made by both him and the employer, the benefits paid to him under that plan were not benefits furnished or provided by the employer "until after the employee's contributions are first returned to him." His contention was that, during the 48–week period that he otherwise would have received workers' compensation benefits, he was receiving from the pension plan only a return of his own contributions and therefore "could not be said to be receiving payments from his employer which were 'equal to or better than' the workmen's compensation award established for this same time period." *Frank, supra,* 284 Md. at 660, 399 A.2d at 253–54. That argument was based on § 72(d) of the Internal Revenue Code, which provided that, if a retiree receives benefits under a pension plan funded by both employee and employer contributions, the amounts received by the employee are not taxable until the employee has received the total amount of his or her contributions to the plan.

We rejected Frank's argument. We observed initially that the unmistakable purpose of Article 101, § 33 was "to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Id.* at 659, 399 A.2d at 253. The statute, we held, did not mandate that the pension benefit be *entirely* supplied by the employer in order to qualify as a set-off, and we pointed out that the addition of such a requirement "would frustrate the legislature's intention to minimize the burden on the public treasury that would result from providing *duplicate* benefits to public employees." *Id.* at 661, 399 A.2d at 254 (emphasis added). We concluded, therefore, that the employer was entitled to be discharged from its compensation obligation "whenever the total amount of any employee benefit, whether furnished entirely or partially by employer funds, is

equal to or better than the workmen's compensation award." *Id.*

We then noted a "second flaw" in Frank's argument—the assumption that the benefits of the two plans "are only to be compared for the period in which the two will be simultaneously due." *Id.* That argument, we said, also would require an addition to the statutory language, as there was no provision in the statute that placed a time limitation on the contrast that was to be made. The Internal Revenue Code provision, we held, was inserted by Congress "solely for administrative reasons and not because that legislative body believed employee contributions were actually returned first." *Id.* at 662, 399 A.2d at 255. A more sensible interpretation of the pension was that each monthly payment represented a prorated return of the employee's contributions, augmented by employer-generated funds.

The Court of Special Appeals seized on the part of our discussion in *Frank* noting the absence of a time limitation and directing that the total amounts of the two benefits were to be compared, to conclude that "[t]he officer's date of retirement was not central to *Frank*" and, indeed, that the date of retirement was "irrelevant to the application of the offset provision." *Wills v. Baltimore County, supra,* 120 Md.App. at 312, 707 A.2d at 124. From that premise, the court went on to determine that the lack of an overlap in Blevins's benefits also was irrelevant. It held that, because the Commission "awarded Blevins workers' compensation benefits from the date of his injury forward, into the period of retirement during which Blevins receive[d] disability benefits," there was "a substantial period of overlap of benefits." *Id.* Under *Frank,* it held, "the entire workers' compensation award should have been compared to the entire disability retirement award, irrespective of time frame." *Id.*

It is true that, in *Frank,* the date of retirement was irrelevant, but that was because the workers' compensation benefits did not extend beyond that date. The issue was whether the retirement benefits paid during the first 48 weeks

of retirement actually constituted an employee benefit, Frank's argument being that, because those payments represented a return of his own contributions, they did not constitute such a benefit and, for that reason, did not serve as a credit against compensation benefits. It was in that context, and that context alone, that we concluded that the benefit package needed to be viewed in its entirety. Indeed, we have subsequently made clear that permanent disability compensation benefits are awarded and paid on a weekly basis and are to be regarded as weekly benefits. *See Philip Electronics v. Wright,* 348 Md. 209, 703 A.2d 150 (1997); *Porter v. Bayliner,* 349 Md. 609, 709 A.2d 1205 (1998).

The simple fact here is that Colonel Blevins would not be receiving a duplicate benefit for the same injury, as was the case in *Frank.* The workers' compensation benefits were awarded for a weekly period prior to his retirement, when he was not receiving and was not entitled to receive any offsetting retirement benefits. The fact that the actual award of workers' compensation benefits or their payment came after his retirement is of no consequence. There was no overlap, as found by the Court of Special Appeals.[2]

### *Wills*

Mary Wills was a clerical employee for Baltimore County. On March 26, 1992, she suffered a work-related injury to her back, requiring hospitalization and further treatment and rendering her unable to return to work. On February 8, 1993, Ms. Wills, then 70 years old with 31 years of service, retired. Three days later, she began receiving ordinary service-based

---

**2.** The county cites *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977) and *Tsottles v. City of Baltimore,* 55 Md.App. 58, 460 A.2d 636 (1983) in support of its position, but neither case is apposite. In *Mazor,* we sustained the constitutionality of Article 101, § 33 against a variety of challenges and held that (1) it served to satisfy not only the employer's obligation but also that of the employer's insurer, and (2) it was not limited to cases where the employee died. In *Tsottles,* the Court of Special Appeals held that § 33 applied to a Baltimore City teacher, notwithstanding that the retirement benefits were paid by the State.

retirement benefits in the amount of $300/week. She thereafter filed a claim for workers' compensation benefits. A hearing before the Commission was held on March 4, 1994 on eight issues raised by the county, all involving the nature, extent, and cause of her injury. Although it was clear that Ms. Wills was then retired and was receiving retirement benefits—a fact she admitted in her testimony—the county never raised the issue of whether any workers' compensation benefits to which she might be entitled were subject to set-off by the retirement benefits. This neglect was apparently based on the county's view, at the time, that ordinary service-based retirement benefits did not qualify to be set off against workers' compensation benefits.

In an order entered March 17, 1994, the Commission addressed each of the issues raised by the county and concluded that Ms. Wills had a permanent total disability, 75% of which was attributable to the accidental injury she suffered in March, 1992. Temporary total disability benefits, most of which were discharged through salary continuation benefits, were awarded up to December 31, 1992, and, commencing January 1, 1993, the county was directed to pay permanent total disability benefits at the rate of $329/week for 500 weeks, not to exceed $164,500. The Subsequent Injury Fund was directed to continue those benefits thereafter, for as long as Ms. Wills remained permanently totally disabled. The county sought judicial review of the award but failed to raise any issue with respect to set-off. In November, 1995, the Circuit Court for Baltimore County affirmed the Commission's award.

In January, 1996, the county changed its institutional mind and concluded that, as the result of the 1991 rewriting of Article 101, § 33, in the form of § 9–610 of the Labor and Employment Article, ordinary retirement benefits *did* qualify as a set-off. It therefore filed an issue before the Commission seeking, for the first time, to have Ms. Wills's $300/week pension benefit set off against her $329 weekly compensation award. As noted, when the compensation benefit exceeds the alternative offsetting benefit, the employer must pay the difference. Sections 9–610(a)(3) and (c) deal with that situa-

tion. The former states that "[t]he computation of an additional benefit . . . shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award." Section 9–610(c) provides, in relevant part:

"(1) The Commission may:

(i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and

(ii) make an award against the employer . . . to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission."

Although the document filed by the county with the Commission is not in the record before us, the county asserted, without contradiction, that it was invoking the continuing jurisdiction of the Commission under § 9–610(c)(2). After a hearing, the Commission denied relief, relying principally on the requirement of § 9–610(a)(2) that the computation of the incremental benefit must be done at the time of the initial award. It noted that the county was aware of the relevant facts at the time of the 1994 hearing and could have raised the issue at that time. The change in the statute, to the extent relevant, occurred in 1991. Upon the county's petition for judicial review, the Circuit Court for Baltimore County reversed. Although it agreed that if, as here, the claimant was receiving the pension benefit at the time of the award, any increment must be determined at that time, the court concluded that, under § 9–610(c)(2), the employer could invoke the continuing jurisdiction of the Commission and seek a set-off later. In this instance, it held, Ms. Wills suffered no prejudice from the delay, as she continued to receive both benefits.

On the merits, the circuit court noted that, prior to 1991, the predecessor to § 9–610(a) permitted a set-off only for benefits that were "similar" to workers' compensation benefits and that, in *Newman v. Subsequent Injury Fund,* 311 Md. 721,

537 A.2d 274 (1988), we held that an ordinary retirement benefit did not constitute a "similar benefit" for purposes of the statute and therefore did not qualify to be set off against workers' compensation benefits. The court observed also, however, that, in enacting § 9–610, the General Assembly dropped the word "similar" from the statute, thereby eliminating the distinction, for set-off purposes, between similar and non-similar benefits. On that basis, it concluded that the county was entitled to the set-off.

The Court of Special Appeals affirmed. In doing so, it first rejected Ms. Wills's argument that the Commission's decision declining to revise its 1994 order was not subject to judicial review, and that the circuit court should therefore have dismissed the county's petition. Distinguishing the situation before it from that presented in *Robin Express v. Cuccaro*, 247 Md. 262, 230 A.2d 671 (1967) and *Roadway Express, Inc. v. Gray*, 40 Md.App. 66, 389 A.2d 407 (1978), the appellate court concluded that the Commission had, in fact, exercised its continuing jurisdiction, reopened the 1994 ruling, considered the county's argument, and denied its request for relief on the ground that § 9–610(a)(3) barred entitlement to a set-off after the making of an initial award. That decision, the court held, was "an appealable 'new holding.'" *Wills* at 294, 707 A.2d at 115.

The Court of Special Appeals also agreed with the substantive ruling of the circuit court. Though acknowledging that § 9–610 was enacted as part of a general code revision and that changes in wording made through code revision ordinarily are not construed as making substantive changes in the law, the appellate court presumed that the Legislature was aware of our holding in *Newman*, with its emphasis on the adjective "similar" in the statute, and it concluded that the Legislature's omission of that word in the rewriting necessarily had substantive significance. It held that "[t]he importance of the word 'similar' to the *Newman* holding and the lack of any explanation based on form alone for its disappearance upon recodification from the current governmental employee offset provision is compelling evidence that the Legislature took

positive action to remove the word from the statute for a substantive purpose, *i.e.,* to modify the law." *Wills, supra,* 120 Md.App. at 302–03, 707 A.2d at 119.

■ Although we question the appellate court's analysis with respect to the county's right to judicial review under § 9–736, we shall not rest our decision on that issue. Far more important, from a public policy point of view, is our disagreement with conclusions of the lower courts regarding the effect of the 1991 rewriting of Article 101, § 33. We shall conclude that the Legislature's omission to carry forth the word "similar" into § 9–610(a) was not intended to effect a substantive change in the law and shall reverse the judgment of the Court of Special Appeals for that reason.

### Right To Judicial Review

Section 9–610(c)(2) is one of at least three "continuing jurisdiction" provisions in the Workers' Compensation Law. *See also* § 9–736, providing generally for the Commission's continuing jurisdiction, subject to a five-year statute of limitations, over "each claim under this title," and § 9–681(j), providing continuing jurisdiction in the Commission with respect to benefits payable to persons who were dependent on deceased covered employees. All of these sections must be read in conjunction with § 9–737, however, which provides for judicial review of Commission decisions and requires that a petition for such review be filed within 30 days after the date of the Commission's order.[3]

---

3. Section 9–737 was derived principally from former Article 101, § 56, which permitted a party aggrieved by any decision of the Commission to have that decision reviewed by a proceeding "in the nature of an appeal." Judicial review of Commission decisions and orders was subject to title 1100, subtitle B of the Maryland Rules, which have since been recodified as Rules 7–201 through 7–209. *Hensley v. Bethesda Metal Co.,* 230 Md. 556, 188 A.2d 290 (1963). Rule 7–203 (former Rule B4) requires that the petition be filed within 30 days after the date of the order or decision sought to be reviewed, unless notice of that decision is required to be sent or received, in which event the time begins to run when that condition is satisfied. When § 9–737 was first enacted in 1991, as part of the code revision process, it specified that an

The issue of whether a decision by the Commission not to revise an earlier award or ruling is subject to judicial review has been before this Court on a number of occasions. In *Gold Dust Corp. v. Zabawa,* 159 Md. 664, 152 A. 500 (1930), we addressed the question of whether a claimant, whose claim was denied on the merits and took no timely "appeal" from that decision, could "then, upon an application to the commission for a reopening of the question, and a refusal of his application, prosecute an appeal within thirty days from that refusal." *Id.* at 665, 152 A. at 501. We began by confirming that the requirement that petitions for judicial review be filed within thirty days after the decision was "positive and mandatory." *Id.* at 666, 152 A. at 501. The refusal to reopen was certainly a decision, we said, "but it was only a decision not to interfere with a previous decision settling the merits of the claim," and "it is regularly considered that a decision declining to interfere with a previous decision is not one intended to be included under a general statutory allowance of appeal from any decision." *Id.*

We analogized requests to reopen a Commission decision to requests to reopen court judgments and noted the doctrine prevailing at the time that "from a final order merely refusing to reopen a previous order or decree no appeal is permitted." *Id.* at 667, 152 A. at 501. Quoting from the early decision in *Lefever v. Lefever,* 6 Md. 472, 478 (1854), we iterated concern that if parties could challenge final orders on appeal in this indirect way, "it would virtually amount to a repeal of the law limiting the time within which appeals should be taken, and lead to interminable litigation." *Id.* at 667, 152 A. at 502. We thus concluded that the general principle of not allowing appeals from orders declining to reopen previously entered final orders and judgments, was "equally applicable" to the statutory allowance of judicial review of Workers' Compensa-

aggrieved party could "appeal" in accordance with the subtitle B rules. In 1995, § 9–737 was amended to require that the "appeal" be instituted through a petition for judicial review filed within 30 days after the date of the Commission's order in accordance with Title 7 of the Maryland Rules.

tion Commission decisions, absent some contrary provision in the statute. Distinguishing and sharply limiting the language and holding of *Bethlehem Shipbuilding Corp. v. Simmons,* 143 Md. 506, 122 A. 678 (1923), the *Gold Dust* Court concluded that the provision for continuing jurisdiction in the Commission—the predecessor of current § 9–736—"seems to provide nothing more than a power to reopen, and we do not see that it bears upon the right of appeal." *Gold Dust Corp., supra,* 159 Md. at 669, 152 A. at 502. On that premise, this Court reversed the judgment of the circuit court and held that the lower court should have dismissed the claimant's "appeal."

In a number of subsequent cases, we drew a distinction between the Commission simply declining to reopen a final ruling, which was the case in *Gold Dust,* and the Commission effectively granting a motion to reopen, reconsidering an earlier ruling, and entering a new ruling, whether the effect of the new ruling is the same as or different from the earlier ruling. In *Robin Express v. Cuccaro, supra,* 247 Md. 262, 265, 230 A.2d 671, 672, after reviewing the relevant cases, we made clear that "[i]f a court or administrative body reopens a case its second decision, be it the same or different from its previous decision, is a new holding; if it refuses to reopen, it decides only not to interfere with its previous decision which stands unimpeached as of its original date."

When, upon the filing of an application to reopen or on its own initiative, the Commission enters a new order that differs in any material way from the earlier order, whether or not the end result is the same, it is obvious that the matter has been reconsidered and a new holding made. Conversely, if the Commission denies an application without discussing the merits or propriety of the earlier order, it is evident that the earlier order has not been reconsidered and no new holding has been made. The prospect of ambiguity arises when the Commission considers an application to reopen and, without making clear its intent, enters an order declining to revise the earlier order. The reviewing court then must attempt to determine from the record whether the Commission has, in effect, granted the application and affirmed its earlier ruling

or has simply declined to reconsider that ruling. In trying to fathom the Commission's intent, the court should consider, among other things, whether evidence was taken on the application, whether, in entering its new order, the Commission discussed or made findings with respect to the correctness, validity, or propriety of the earlier order, and whether, in denying relief, the Commission either acted summarily, without assigning reasons, or focused only upon defects in the application itself.

The Commission's action here is ambiguous in this regard. It did not summarily deny the county's application. It held a hearing, considered the county's request for a set-off, and seemed to accept, at least tacitly, that, by virtue of the 1991 rewriting of the statute, ordinary service-based retirement benefits would qualify as a set-off. Its oral remarks from the bench indicate that it denied the county's request for set-off solely on the ground that the right to and amount of any set-off had to be determined at the time of the initial award and could not be considered later. Its written order, entered on June 7, 1996 stated simply, in this regard, that the Commission "has concluded to deny the employer, self-insurer's request for a setoff for benefits under Section 9–610(a)(2) of the Labor Article against compensation previously awarded for permanent partial disability under the Order dated March 17, 1994."

The Court of Special Appeals determined that the Commission "exercised its continuing jurisdiction, considered the County's request for an offset, and ruled that the County was barred from obtaining an offset," and that the Commission "did not refuse to consider the offset issue or simply decide not to interfere with its original award settling the merits of the claim." *Wills v. Baltimore County, supra,* 120 Md.App. at 294, 707 A.2d at 115. We question whether that analysis is correct. The Commission decided not to interfere with its earlier order because it concluded, rightly or wrongly, that it had no authority to interfere with that order. It construed § 9–610(a)(3) as requiring any request for set-off to be resolved at the time of the initial award, at least when the

circumstances justifying a set-off are known at that time. The implication from such a determination is not that the initial award was correct and should be affirmed, but rather that the county's request to modify it was untimely and, for that reason, could not be granted.

■ Although we believe that this is the more likely interpretation, reasonable minds could differ, on this record, of what the Commission's true intent was with respect to the application. We granted *certiorari* in this case to review the substantive holding of the Court of Special Appeals, and we shall therefore not disturb its holding on the procedural issue. We do strongly urge the Commission, however, when considering applications to revise an earlier final decision, to make clear whether it is denying the application or granting it and entering a new order. That is not an onerous burden, and it will help remove the uncertainty with respect to the right of the applicant to seek judicial review under § 9–637.

### *Construction of Section 9–610(a)*

As we have indicated, the crux of the substantive issue before us arises from the fact that, in rewriting Article 101, § 33(d), as § 9–610(a) of the Labor and Employment Article, the General Assembly deleted the word "similar," as it had appeared in § 33(d). The question is whether, in doing so, it intended to make a substantive change in the law. The answer to that question is not evident merely from the text of § 9–610, so we need to look for the legislative intent in a broader context, and that requires, in this case, an examination of the legislative history of the set-off provision.

Local government employees have been dealt with specially since the first enactment of the workers' compensation law in 1914. The original Act, 1914 Md. Laws, ch. 800, required employers who employed workmen in "extra-hazardous employments" to provide the compensation provided for by the Act. Section 34 of the Act provided that, whenever the State or a county or municipality engaged in extra-hazardous work in which workmen were employed for wages, the Act was

applicable "thereto." It went on to state, however, that whenever, and so long as, by State law, city charter, or municipal ordinance, a "provision equal or better than that given under the terms of this Act is made for municipal employees injured in the course of employment such employee shall not be entitled to the benefits of this Act." Nothing was said in the Act about "similar" benefits.

Although the scope of the section was expanded from time to time to add new categories of governmental, or quasi-governmental, employees (*see Clauss v. Board of Education*, 181 Md. 513, 30 A.2d 779 (1943)), the formulation set forth in the 1914 law remained intact until 1970, when, as part of a bill deleting the requirement that employment be "extra-hazardous" to be covered, the entire provision dealing with non-military State and local government personnel was repealed. *See* 1970 Md. Laws, ch. 741. The reason for the repeal is not entirely clear. Chief Judge Orth, in *Nooe v. City of Baltimore*, 28 Md.App. 348, 350, 345 A.2d 134 (1975), *cert. denied*, 276 Md. 748 (1976), suggested that it may have been a "delayed reaction" to this Court's ruling in *Montgomery County v. Kaponin*, 237 Md. 112, 205 A.2d 292 (1964).[4]

*Kaponin* involved a county police officer who, as the result of a job-related injury, suffered a 75% permanent partial disability. He retired and, pursuant to the county pension plan, began receiving disability benefits of $260/month. Thereafter, the officer filed for workers' compensation benefits and received an award of $25/week, which, on a dollar-for-dollar basis, was less than the retirement benefit. The county sought judicial review, arguing that, by virtue of § 33, it was not liable. This Court viewed § 33 not as an offset provision, however, but as "a qualification statute designed to give municipal employers an alternative to providing workmen's

---

4. The legislative history of the 1970 enactment suggests that the repeal was part of a broader extension of workers' compensation benefits. The Act was proposed by the Governor's Commission to Study Maryland's Workmen's Compensation Laws which, in its Tenth Report, of November 6, 1969, stated that the bill was to clarify and broaden the coverage of the Act.

compensation by enacting legislation affording to their employees benefits equal to or greater than those provided by the Workmen's Compensation Law." *Id.* at 115, 205 A.2d at 294. The comparison, we said, was not to be on a case-by-case, dollar-for-dollar, basis, but rather on a law-by-law basis. The county pension plan at issue, while affording Officer Kaponin a higher weekly benefit, did not provide medical benefits or "partial or permanent partial benefits," which were afforded under the workers' compensation law. *Id.* Accordingly, we viewed the provisions of the county pension law as not being equal to or greater than the provisions of the Workers' Compensation Act and held that the officer could collect under both laws. As Judge Orth noted in *Nooe*, "the manifest purpose of § 33 was to a large extent circumvented by the *Kaponin* holding." *Nooe, supra,* 28 Md.App. at 352, 345 A.2d at 137. It is questionable whether many, or any, local pension plans could satisfy the comparability standard imposed by *Kaponin;* pension plans—even disability retirement plans—do not ordinarily provide medical benefits.

Whatever may have been the legislative purpose in repealing § 33 in 1970, the section was restored, in a different format, the next year, as an emergency measure. 1971 Md. Laws, ch. 785. In an obvious attempt to overcome the *Kaponin* standard, the law was rewritten as a dollar-for-dollar set-off provision. In what eventually became § 33(d) of Article 101, the 1971 statute stated that whenever, as part of a pension system or otherwise, "*any* benefit or benefits" were furnished to governmental employees, "*the benefit or benefits* when furnished by the employer" shall satisfy and discharge the employer's obligation for compensation benefits, but that, if the other benefit was less than the compensation benefit, the employer "shall be liable to furnish the additional benefit as will make up the difference between the benefit furnished and the *similar* benefit required in this Article." (Emphasis added.) The 1971 Act added as well a provision authorizing the Commission to determine whether "*any benefit* provided by the employer" was equal to or better than the workers' compensation benefit and to render an award against the

employer to furnish additional benefits to make up the difference between "the benefit" furnished by the employer and the compensation benefit.

It is not entirely clear from the face of the 1971 enactment what the Legislature had in mind when it inserted the limiting word "similar" only near the end of the section, in the provision dealing with the situation where the alternative benefit is less than the compensation benefit, and omitted it elsewhere— in the general set-off provision and in the provision authorizing the Commission to determine whether the alternative benefit is, in fact, equal to or better than the compensation benefit. The title to the Act never mentions the limitation.[5] In 1976, the Legislature rewrote the part of § 33 dealing with military personnel, adding a provision similar to the 1971 law relating to local governmental employees—that, if any benefits provided by the Federal Government were less than those provided under the workers' compensation law, the State should furnish "the additional benefit in order to make up the difference between the benefit provided by the Federal Government and the *similar* benefit required by this article." 1976 Md. Laws, ch. 762 (emphasis added). With that addition, the word "similar" appeared in two places in § 33—in § 33(a), dealing with the organized militia and in § 33(d) dealing with local governmental employees.

The initial cases arising under the 1971 law dealt with situations in which the alternative benefit that the county sought to set off was, in fact, a disability retirement benefit, and the issue of "similarity" did not arise. In *Mazor v. State, Dep't of Correction, supra,* 279 Md. 355, 369 A.2d 82, for

---

5. In relevant part, the title to Chapter 785 states as the purposes of the Act "to provide that whenever *benefits* are furnished by an employer ... equal to or better than the benefits provided under Article 101 ... such ... employer shall be released of any obligation thereunder, but should *such benefits* be less than those required by said Article 101, such ... employer shall make up the difference, and the [Commission] is empowered to determine whether *such benefits* are equal to or better than the benefits required under said Article 101; to authorize the [Commission] to make an award for *any benefit* furnished by an employer which is less than required by this Article...." (Emphasis added.)

example, where we considered a variety of challenges to § 33(d)—then codified as § 33(c)—a prison guard who, as the result of being stabbed by an inmate, was rendered totally and permanently incapacitated for duty, was awarded an accidental disability pension by the State equivalent to $5,059/year. Subsequently, he filed a claim for workers' compensation benefits, was found by the Commission to have sustained a permanent 60% disability as a result of the incident, and was awarded compensation benefits amounting to $3,380/year. On judicial review, the circuit court concluded that the State could set off the disability pension benefit and therefore was discharged from its liability for the workers' compensation benefit, a determination we affirmed.

We looked at both workers' compensation benefits and the disability pension received by Mazor as facets of "an overall system of wage-loss protection," an underlying principle of which "is to restore to the worker a portion of wages lost by physical disability, unemployment, or old age." *Id.* at 363, 369 A.2d at 88. Although two or more causes of wage loss may coincide, the benefits "need not cumulate," we held, "for the worker experiences but one wage loss." Rejecting Mazor's Constitutional challenges to the offset provision, we concluded that the General Assembly could rationally have determined that "since an employee suffers only one wage loss, he should receive the equivalent of only one disability benefit." *Id.* at 365, 369 A.2d at 89. *See also Feissner v. Prince George's Co.,* 282 Md. 413, 384 A.2d 742 (1978); *Frank v. Baltimore County, supra,* 284 Md. 655, 399 A.2d 250; *Nooe v. City of Baltimore, supra,* 28 Md.App. 348, 345 A.2d 134.

In *Frank,* without any particular reference to the word "similar," we noted that "[u]pon reading section 33, the scheme that unmistakably emerges is that the General Assembly wished to provide *only a single recovery for a single injury* for governmental employees covered by both a pension plan and workmen's compensation." *Frank, supra,* 284 Md. at 659, 399 A.2d at 253 (emphasis added). We observed that Lt. Frank's view, that benefits paid under a contributory disability plan did not qualify for set-off, "would frustrate the legisla-

ture's intention to minimize the burden on the public treasury that would result from providing *duplicate benefits* to public employees." *Id.* at 661, 399 A.2d at 254 (emphasis ·added).

In *Oros v. City of Baltimore,* 56 Md.App. 685, 468 A.2d 693 (1983), the Court of Special Appeals had before it three police officers who had suffered job-related injuries and, pursuant to a collective bargaining agreement, were paid full sick leave salary by the·City. Those salary-continuation payments served as a full set-off against the awards of temporary total disability. When the officers, having reached maximum recovery, filed claims for permanent partial benefits, the City, noting that the compensation benefit for temporary total disability was only two-thirds of salary, attempted to set off the additional one-third that it paid during that period against the permanent partial disability benefits. Focusing on the requirement of similarity, the Court of Special Appeals rejected that attempt. It read *Frank* and *Mazor* as recognizing that the legislative intent behind § 33(c) was "to preclude double-dipping into the same pot of comparable benefits," *id.* at 694, 468 A.2d at 697, and concluded that sick leave benefits, which were in the nature of wage-loss protection, were not comparable to permanent partial disability benefits, which compensated not for wage loss but for loss of earning capacity. We affirmed, but on a different ground, holding that benefits sufficient to offset one kind of workers' compensation benefit, such as temporary total disability, may not be used to offset another, distinct, compensation benefit, such as for permanent disability. *City of Baltimore v. Oros,* 301 Md. 460, 483 A.2d 748 (1984).

Baltimore County's argument in the *Wills* case stems principally from *Newman v. Subsequent Injury Fund, supra,* 311 Md. 721, 537 A.2d 274. There, for the first time, we were confronted with a county employee who suffered a work-related injury, who received an award of permanent partial disability benefits, and who retired on ordinary service-related retirement. The retirement benefits were less than the compensation benefits, and, a year-and-a-half after her retirement, the county sought to set off the retirement amounts against

the compensation benefits. The county won in the lower courts, but we reversed. Notwithstanding that the word "similar" appeared only near the end of § 33(d), we held that it also "qualifie[d] the provision at the beginning of the section as to the benefits furnished employees by employers." *Id.* at 724, 537 A.2d at 275. Thus, we said, "[i]t follows that for the setoff to come into play, the two benefits must be 'similar.'" *Id.* We concluded that payment of service-based retirement benefits "had no relation whatsoever to her injury and the disability resulting therefrom" and that the two benefits were therefore "not similar and not comparable." That holding, we noted, was consistent with the view taken in earlier cases that the intent behind § 33(d) was to provide a single recovery for a single injury. The cases allowing set-offs, we said, were decided "in the context of dual benefits accruing by reason of the same injury, that is, two benefits being paid stemming from the same cause." *Id.* at 727, 537 A.2d at 277.

Three years after *Newman* was decided, the General Assembly enacted the Labor and Employment Article as part of the ongoing code revision process. This was a bulk revision of all of the laws relating to labor and employment—not only the workers' compensation law, but the laws relating to the Division of Labor and Industry, collective bargaining, occupational safety and health, farm labor, and unemployment compensation as well. The code revision process, ongoing since 1971, was authorized by statute— §§ 2–1315 through 2–1318 of the State Government Article.[6] Section 2–1316 created the position of Revisor of Statutes, to be appointed by the President of the Senate and the Speaker of the House of Delegates, and § 2–1317 directed that person, among other things, to "make recommendations for the reclassification, rearrangement, renumbering, rewording, and other formal revision of the public general laws in the Code."

---

6. As the result of a re-organization of legislative staff services, those provisions are now contained in § 2–1238 of the State Government Article.

We have long recognized and applied the principle that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law *unless the change is such that the intention of the Legislature to modify the law is unmistakable.*" *Duffy v. Conaway,* 295 Md. 242, 257, 455 A.2d 955 (1983) (emphasis added); *In re Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983). That is because the principal function of code revision "is to reorganize the statutes and state them in simpler form," and thus "changes are presumed to be for the purpose of clarity rather than for a change in meaning." *Bureau of Mines v. George's Creek,* 272 Md. 143, 155, 321 A.2d 748, 754 (1974), quoting from *Welsh v. Kuntz,* 196 Md. 86, 97, 75 A.2d 343, 347 (1950).

■ That principle of statutory construction is particularly appropriate to apply in this case. As the county correctly points out, we must presume that the General Assembly was aware of our decision in *Newman* when it enacted the 1991 law. It is one of the useful fictions of the law that "the Legislature is presumed to be aware of the interpretation that this Court has placed upon its enactments." *Waddell v. Kirkpatrick,* 331 Md. 52, 60, 626 A.2d 353, 357 (1993). It would therefore have been aware, if that fiction is indulged, that the only benefits that a county was entitled to set off against a workers' compensation award were those that were similar to the compensation benefits—those which, if not set off, would permit a double recovery for the same injury. Given the principle that, ordinarily, an intent to make a substantive change in the law is not implied from language changes made through code revision, we look to see if there is some evidence, other than the mere dropping of the word "similar" in one of the two places it appeared in § 33, that the Legislature intended, through the vehicle of the Code Revision Bill, to make such a drastic substantive change, one that, for the first time since at least 1971, and possibly since 1914, would have barred local government employees who received service-based, non-disability, retirement benefits from collecting workers' compensation. None has been cited to us, nor have we found any. Indeed, the evidence is to the contrary.

In conformance with code revision practice, the Department of Legislative Reference prepared a Report for the General Assembly, to accompany the Code Revision Bill (1991 House Bill 1). That Report made clear that the proposed Article was a code revision product. It noted:

"The basic thrust of the revision is formal; the primary purposes of the work are modernization and clarification, *not policymaking.* Nonetheless, a revision sometimes must touch on the substance of the law. Every effort is made to ensure that a proposed revision conforms as nearly as possible to the intent of the General Assembly, *and all these revisions are highlighted in the appropriate revisor's notes.* In other instances, the staff has used revisor's notes to call to the attention of the General Assembly fundamental policy issues that are beyond the purview of the revision process *but has made no attempt to resolve the policy problems."*

(Emphasis added.)

The revision of § 33, as noted, deleted the word "similar" from the provision dealing with local government employees, but it did *not* delete the word from the analogous provision dealing with military personnel. *See* § 9–610(b)(2). The Revisor's Note to § 9–610 says nothing about the deletion and nothing about an intent to distinguish between military and local government personnel. Indeed, it makes clear that no substantive change was intended, stating, in relevant part: "This section is new language derived *without substantive change* from former Art. 101, § 33(e), the second and third sentences of (a), the first, second . . . and third sentence of (d)." (Emphasis added.) Revisor's Notes, though not part of the statute, "are entitled to considerable weight in ascertaining legislative intent." *Dean v. Pinder,* 312 Md. 154, 163, 538 A.2d 1184, 1189 (1988); *Office & Prof. Employees Int'l v. MTA,* 295 Md. 88, 101, 453 A.2d 1191 (1982); *Allers v. Tittsworth,* 269 Md. 677, 683, 309 A.2d 476, 480 (1973). In light of the Report, it is significant that the General Assembly made no change at all to the several hundred page bill, but enacted it, without amendment, as introduced. Substantive changes to the laws included in the code revision bill *were*

made at the same session by other enactments,[7] but the Legislature implicitly accepted House Bill 1 as represented, as making no substantive change in the law not specifically noted in a revisor's note.

On this record, it is evident that the General Assembly did not intend to make any substantive change to the law in deleting the word "similar." There is simply no basis for a conclusion that, despite the Revisor's Note and the Report, the Legislature, *sub silentio*, desired to deprive local government employees of a benefit they had so long enjoyed. The Court of Special Appeals erred in deciding otherwise. The test for set off under § 9–610 is the same as it was under § 33, and, under that test, the county is not entitled to set off Ms. Wills's retirement benefits against her workers' compensation benefits.

JUDGMENT OF COURT OF SPECIAL APPEALS IN *BLEVINS* AND *WILLS* REVERSED; CASES REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENTS OF CIRCUIT COURT FOR BALTIMORE COUNTY; AND REMAND THE CASES TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISIONS OF THE WORKERS' COMPENSATION COMMISSION; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.

---

7. It appears that 74 sections of the Labor and Employment Article, most of which were in Title 9—the Workers' Compensation Law—were amended in the 1991 Session by separate legislation.