808 A.2d 782

BLIND INDUSTRIES AND SERVICES OF MARYLAND

v.

MARYLAND DEPARTMENT OF GENERAL SERVICES.

No. 32, Sept. Term, 2000.

Court of Appeals of Maryland.

Oct. 9, 2002.

Thomas M. Wood, IV (Hugh M. Bernstein of Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., on brief), Baltimore, for Petitioner.

Jennifer L. Forrence, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.; Laurie A. Lyte and Pamila J. Brown, Asst. Attys. Gen., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL, and HARRELL, JJ.

BELL, Chief Judge.

We granted certiorari in this case to resolve whether the preference in favor of the supplies and services of Blind Industries & Services of Maryland ("Blind Industries"), the appellant, prescribed in Maryland Code (1957, 1995 Repl.Vol., 1999 Cum.Supp.) § 14–103 of the State Finance and Procurement Article,[1] applies when Blind Industries provides supplies and services not ordinarily provided by it and it provides the supplies and services as a broker, rather than as a manufac-

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Unless otherwise indicated, future references will be to Md.Code (1957, 1995 Repl.Vol., 1999 Cum.Supp.) of the State Finance and Procurement Article.

turer. The Circuit Court for Baltimore County answered, "no" and so shall we.[2]

---

**2.** During oral argument, the Court raised questions with respect to whether, because Blind Industries & Services of Maryland is a creature of the State and the Department of General Services, an agency of the executive branch of State government, the dispute before the Court is justiciable by the courts or is one that must be resolved by the Governor, as the head of the executive branch. We asked the parties to address the issue by way of supplemental briefing. They did so and concluded that the dispute is justiciable and, further, that Blind Industries is neither a State agency nor so closely regulated by the State, or the Governor, in particular, as to permit the Governor to resolve the dispute unilaterally. We agree that the dispute is justiciable.

Blind Industries came into being in 1908, when the General Assembly enacted legislation providing for "The Maryland Workshop for the Blind," a body corporate, the board of trustees for which was appointed by the Governor and, initially, by the Board of Directors of the Maryland School for the Blind. 1908 Maryland Laws, ch. 566. Originally codified in Maryland Code (1912) Article 30, that law gave the organization a small annual amount of financial support and its board of directors broad latitude to manage its own operations. Aside from providing for the ownership of property, the right to sue and be sued, to hire necessary employees and set their compensation, the statute allowed the board of directors to:

"... acquire suitable quarters by lease, purchase or otherwise in Baltimore City ... and ... establish, maintain, direct and supervise all matters pertaining to the workshop, its maintenance and regulation, including the purchase of all machinery as may seem to them to be suitable and necessary, and the barter or exchange of articles or manufactures entrusted to them for disposal."

Article 30, § 6. Other than the change of name to the present one, *See* 1973 Maryland Laws, ch.164, the change in the number of directors from five to eleven, *See* 1973 Maryland Laws, ch. 164, the change in the composition of the board, requiring that four directors be blind persons, *See* 1988 Maryland Laws, ch. 453, and the change in the appointing authority, the Governor now appoints all directors, *See* 1976 Maryland Laws, ch. 122, the organizational structure and the relation of the organization to the State has not changed.

Blind Industries is incorporated under the Maryland Corporations law and, in fact has acquired nonprofit, charitable corporation status under § 501(c)(3) of the Internal Revenue Code. *See* 26 U.S.C. § 501. Since its inception, the board has been subjected to "limited indicia of State control," 78 Md. Op. Atty. Gen. 128, 135 (1993), by being required to keep proper records of Blind Industries' funds and accounts, being audited annually, and being required to make an annual report to the Governor, the General Assembly, and the Chairman of the Joint Budget and Audit Committee. Maryland Code (1957, 1997 Replacement Volume) Article 30, § 6(e). Nevertheless, Blind Industries' budget is not a part of the State budget, 78 Op.Atty. Gen., at 135

Blind Industries, legislatively created to train and employ blind citizens, filed a declaratory judgment action in the Circuit Court for Baltimore County, in which it also sought injunctive relief against the Department of General Services, the appellee, in response to the appellee's refusal to award it, pursuant to the statutory preference it enjoys and, thus, without competitive bidding, the Statewide Office Supply contract. At the heart of the case was, and is, § 14–103. It provides, as relevant:

"The State or a State aided or controlled entity shall buy supplies and services from:

\*     \*     \*     \*     \*     \*

"(2) Blind Industries and Services of Maryland, if:

"(i) Blind Industries and Services of Maryland provides the supplies or services; and

"(ii) State Use Industries does not provide the supplies or services . . . ."

---

("[a]lthough BISM receives money from the State pursuant to a grant agreement, the State is under no statutory obligation to fund BISM"); its employees are not State employees, 53 Op. Atty. Gen. 249, 250 (1968); and Blind Industries, although described as a "quasi-public corporation," 78 Op. Atty. Gen. at 135 136, because, "despite its public welfare role, [it] does not exercise governmental powers," *id.*, is not a State agency. *See* Maryland Manual, in which the State Archivist has classified Blind Industries under its Table of Contents as a "Private Agenc[y] with Government Boards."

We agree, in any event, with the appellant that the dispute is justiciable by the courts, involving both an issue that traditionally is justiciable and one where there is a genuine dispute and adversity. *United States v. Interstate Commerce Comm'n,* 337 U.S. 426, 430, 69 S.Ct. 1410, 1413, 93 L.Ed. 1451, 1457 (1949) ("courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented."); *United States v. Nixon,* 418 U.S. 683, 697, 94 S.Ct. 3090, 3102, 41 L.Ed.2d 1039, 1058 (1974) (dispute between special prosecutor and president presents traditionally justiciable issue); *West v. Gibson,* 527 U.S. 212, 217, 119 S.Ct. 1906, 1909–10, 144 L.Ed.2d 196, 203 (1999) (holding that the EEOC has the authority to require federal agencies to pay compensatory damages in employment discrimination cases); *Pulaski County v. Jacuzzi Bros.,* 317 Ark. 10, 875 S.W.2d 496, 498 (1994); *Friedrichs v. Goldy,* 153 Colo. 554, 387 P.2d 274, 277 (1963); *State v. CNA Ins. Cos.,* 172 Vt. 318, 779 A.2d 662, 668 (2001).

There was, to be sure, no disagreement as to the fact that Blind Industries was entitled to a preference; rather, the dispute revolved around to what the preference related. In other words, the issue the declaratory judgment action presented was the meaning and reach of the statutory preference.

Relevant to the interpretation of § 14–103 is the manner in which the appellant proposed to provide the supplies and services, as well as what the appellant intended to provide. Traditionally, Blind Industries has operated manufacturing plants, producing various goods, at which blind citizens are employed in the manufacturing process. Among the goods manufactured, and relevant to the case sub judice are paper products, such as legal pads and easel paper, for office use. In addition to these products, the evidence presented at trial was, and the court found, that

"What Blind Industries proposes to do is to utilize the services of 6–10 individuals who are legally blind: (1) to staff an office with phones and computers, (2) to take orders from State agencies needing office supplies under the contract to be awarded, (3) to order the goods, primarily from a single third party, and (4) to have most of the goods drop shipped from the third party to the agency placing the order. Profits of a substantial nature would inure to the benefit of Blind Industries if the contract is awarded to it, which profits would be used to provide services to the blind people of Maryland for whom it exists and works, in addition to the employment of as many as ten (10) individuals, who are legally blind, and would thereby directly profit by having full time employment." [3]

---

**3.** While acknowledging the importance of any profit, which it, agreeing with the parties, believed would be substantial, to the full realization of the work that Blind Industries does, the court commented that "[e]ven at $10 per hour for ten full time workers, the earnings inuring to the benefit of [the blind individuals hired to run the brokering operation] [are] very, very small compared to the overall value of the total contract and the profits to be realized."

The court's finding as to how the appellant intends to proceed is consistent with the appellant's own description of its proposed operation:

Following a two day non-jury trial, the Circuit Court declared, "under the facts presented of record, Blind Industries and Services of Maryland ... is not entitled to a statutory preference by ... § 14–103 so as to require the State of Maryland to award it the Maryland State Office Supply Contract for the year 2000." In so declaring, the court rejected the appellant's argument that the preference applies whatever the source of the supplies and services provided, whether through manufacture, passthrough or subcontract, concluding, on the contrary, that it applied "to those goods and services being predominantly manufactured or otherwise provided by individuals who are legally blind." Relevant to that conclusion, the court pointed out, was the emphasis in the statutes on "articles 'manufactured' by the blind." It cited Maryland Code (1957, 1997 Replacement Volume) Article 30, § 3, which provides:

> *"Powers of board of trustees of Blind Industries and Services of Maryland.* The board of trustees of Blind Industries and Services of Maryland is authorized and empowered to apply such portion of their endowment fund and annual income as they may deem expedient to establish training and employment centers and to open a store for the *sale of articles manufactured by the blind,* and to extend the benefits of such centers and store to the adult blind of

---

"Essentially, Blind Industries would act as a distributor or retailer. The ordering agency would place an order with Blind Industries who would then process the order and, for supplies not actually manufactured by Blind Industries, procure those products from a wholesaler and arrange delivery to the ordering State agency. In other words, Blind Industries would simply be doing precisely what Boise [the contract holder] was doing."

The appellant conceded that there are differences, which it characterizes as "slight," between its proposal and the manner in which the present contract holder, Boise–Cascade Office Products fulfilled the contract: Boise, unlike the appellant, maintains a warehouse of inventory and it maintains a small fleet of delivery trucks.

this State not resident in the institutions, on such terms and under such regulations as they may prescribe,"

and § 6(c) and (d):

"(c) *Duties generally.*—The Blind Industries and Services of Maryland shall be open for *the labor and manufactures of all blind citizens of Maryland* over eighteen years of age, who can give satisfactory evidences of character and of their ability to do the work required of them. All the profits arising from the operation of blind industries shall be used in furthering its usefulness.

"(d) *Acquisition of property; supervision, etc., of blind industries*—The board shall acquire suitable quarters by lease, purchase or otherwise in the State of Maryland and shall have full power to establish, maintain, direct and supervise all matters pertaining to blind industries, its maintenance and regulation, including the purchase of all machinery and materials as may seem to them suitable and necessary, and the barter or exchange of articles or manufactures entrusted to them for disposal."

(Emphasis added).

Aggrieved by that judgment, the appellant noted an appeal to the Court of Special Appeals and, at the same time, filed in this Court a Petition for Writ of Certiorari. We granted the petition while the case was pending in the intermediate appellate court. *Blind Industries v. DGS,* 359 Md. 28, 753 A.2d 1 (2000).

The appellant submits that resolution of this case involves statutory interpretation. Section 14–103 is, to the appellant, "crystal clear." Thus, application of the canons of statutory construction to the interpretation of § 14–103, it insists, leads to a clear and equitable result, that it is entitled to the preference even though it does not manufacture all of the products it will supply pursuant to the contract. Where the words of the statute are clear and unambiguous and express a clear meaning, the appellant asserts, effect will be given to the statute; there is no occasion to resort to legislative history.

The key word is "provide," the appellant argues. Noting that it is defined by Black's Law Dictionary (6th Ed.1990), p. 1224, as "to make, procure, or furnish for future use," it states that "the statute's requirement that the State purchase any supplies or services 'provided' by Blind Industries, specifically includes supplies and services which Blind Industries obtains (or procures) from third parties and then provides to the State." Indeed, as the appellant sees it, "[b]ecause the statute requires State agencies to purchase office supplies 'provided' by Blind Industries, awarding the Office Supply Contract to anyone but Blind Industries would be an *ultra vires* act."

The appellee, of course, does not agree. It agrees with the judgment of the Circuit Court because it believes that the preference to which Blind Industries is entitled applies only to awards of contracts involving supplies that Blind Industries manufactures or assembles. This, it asserts, is the Legislature's intent, which is clearly discerned from the legislative history of the preference, the statutory context and the purpose of the preference. As to the latter, like the Circuit Court, the appellee finds relevant that the emphasis in passing the initial legislation, continued to today, citing and quoting COMAR 21.11.05.01.B (1),[4] was on articles manufactured by blind individuals. Accordingly, it concludes:

> "By attempting to take over the statewide contract for office supplies, for which Blind Industries would neither manufacture the goods provided nor add value to the goods provided, Blind Industries is overreaching its legislatively mandated preference."

Also relevant, the appellee submits, is the fact that when the preference was initially given to the appellant, the appellant was engaged in the manufacture of textiles, including uniforms, surgical drapes and surgical wraps. Furthermore, asserting that "[t]he Procurement Law generally requires that

---

4. COMAR 21.11.05.01.B (1) provides:

" 'Blind Industries and Services of Maryland' means the entity designated by law to produce supplies manufactured and assembled by processes involving blind workers."

goods and services be purchased with competitive means to promote the integrity and maximize value to the State," citing § 11–201,[5] the appellee cites *Chesapeake Charter, Inc. v. Anne Arundel County Board of Education,* 358 Md. 129, 135, 747 A.2d 625, 628 (2000), quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986), for the proposition that adopting the construction urged by the appellant would lead to "an illogical or unreasonable result, or one which is inconsistent with common sense."

Alternatively, the appellee contends that, apart from the statutory language and the legislative history, the § 14–103 preference simply can not apply in the situation where the provider of goods and supplies is a mere broker of the goods and supplies. Such a construction of § 14–103, it asserts, is inconsistent with the procurement regulations applicable to the appellant, Chapter 05. of COMAR 21.11.,[6] and would

---

**5.** § 11–201(a) provides:

"(a) The purposes and policies of this Division II include:

"(1) providing for increased confidence in State procurement;

"(2) ensuring fair and equitable treatment of all persons who deal with the State procurement system;

"(3) providing safeguards for maintaining a State procurement system of quality and integrity;

"(4) fostering effective broad-based competition in the State through support of the free enterprise system;

"(5) promoting increased long-term economic efficiency and responsibility in the State by encouraging the use of recycled materials;

"(6) providing increased economy in the State procurement system;

"(7) getting the maximum benefit from the purchasing power of the State;

"(8) simplifying, clarifying, and modernizing the law that governs State procurement;

"(9) allowing the continued development of procurement regulations, policies, and practices in the State; and

"(10) promoting development of uniform State procurement procedures to the extent possible."

**6.** Pursuant to COMAR 21.11.05.02.A., "[e]xcept as otherwise provided in these regulations," state agencies and affected entities are mandated to procure all supplies and services available from a "selling entity." Subsection 01.B. (7) defines "selling entity" to include, in addition to State Use Industries and sheltered workshops, Blind Industries and

undermine the goals of State procurement, "to foster competition and to obtain the best value for the taxpayer."

"The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 301, 783 A.2d 667, 670 (2001). As we have said many times, most recently in *WCI v. Geiger*, 371 Md. 125, 140, 807 A.2d 32, 41 (2002), we start our search for legislative intent with the words of the statute being construed. When those words are clear and unambiguous, viewed "in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood," *Derry v. State*, 358 Md. 325, 335, 748 A.2d 478, 483 (2000), we look no further, *Marriott Employees v. MVA*, 346 Md. 437, 445, 697 A.2d 455, 458; rather, as the appellant points out, giving the words their commonly understood meaning, we give effect to the statute as written. *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1206–1207 (1994). Moreover, we neither add nor delete words in order to give the statute a meaning not otherwise communicated by the language used or to "reflect an intent not evidenced in that language," *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 755 (1993). And we do not construe the statute with " 'forced or subtle interpretations' that limit or extend its application." *Id.* (quoting *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). Only when the statutory language is unclear and ambiguous, will we look to other sources, such as the legislative history, to discover legislative intent. *Geiger*, 371 Md. 125, 141, 807 A.2d 32, 42 (2002); *Degren*, 352 Md. 400, 417, 722 A.2d 887, 895 (1999); *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590, 594 (1992).

With regard to determining whether a statute is ambiguous, we have been clear; an ambiguity may still exist even when the words of the statute are themselves "crystal clear."

---

Services of Maryland. Subsection 02.C. provides: "This Chapter does not apply to supplies or services provided under subcontract to a selling entity."

That occurs when its application in a given situation is not clear. See *Gardner v. State,* 344 Md. 642, 689 A.2d 610, 613 (1997). This is consistent with this Court's recognition that a term which is unambiguous in one context may be ambiguous in another. *Webster v. State,* 359 Md. 465, 481, 754 A.2d 1004, 1012 (2000); *Sullins v. Allstate,* 340 Md. 503, 508, 667 A.2d 617, 619 (1995); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. at 74, 517 A.2d at 732 ("That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled."). We have also acknowledged that "[l]anguage can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear . . .; or 2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." *Gardner v. State,* 344 Md. at 648–49, 689 A.2d at 613, (quoting *Bernhardt v. Hartford Fire Ins. Co.,* 102 Md.App. 45, 54, 648 A.2d 1047, 1051 (1994) quoting *Town & Country v. Comcast Cablevision,* 70 Md.App. 272, 280, 520 A.2d 1129, 1132, cert. denied, 310 Md. 2, 526 A.2d 954 (1987)).

"Provide" is the critical word. We also agree with the appellant that it has a clear and an expansive meaning. In addition to making it, a product or good can be provided if it is procured or otherwise furnished for future use. *See* Black's Law Dictionary, at 1224 Thus, given the expansive meaning of "provide," the requirements of the § 14–103 preference conceivably could be complied with either by Blind Industries providing products it makes or those that it procures for later resale.

The appellant admits that it provides only the office supplies it manufactures, although it is quick to point out that it is able to-it could-procure the other supplies and services called for by the Statewide Office Supply contract:

"With respect to office supplies, Blind Industries provides (or at least has the ability to provide) two types of products: (1) products it actually manufactures itself (e.g. certain paper products) and (2) products manufactured by others which Blind Industries procures and sells, like a retailer, to an end user."

Because "provides" encompasses both manufacture and procurement, by its own admission, the appellant has not provided supplies and services by means of procurement, although prepared to do so now. Furthermore, when awarded the preference at issue, the appellant "provided" only products that it manufactured. It follows, therefore, that the question that must be answered is whether the General Assembly intended the preference to apply to the latter products or to all products that the appellant could, or has the ability to, provide.

Section 14–103 speaks in the present tense. It refers to supplies and services that the appellant "provides;" it does not by its terms refer to those that the appellant has the ability to provide. This raises the question of whether the preference applies only to those supplies and services actually provided, however acquired, or to those that the appellant could, but has yet to, provide. Given the context in general and in which "provides" is used, and particularly that the appellant has never provided products that it did not manufacture, legislative intent on this point is at least unclear. Therefore, the term, "provides," is ambiguous.

Having determined that the statute is ambiguous, it is necessary that we seek the legislative intent by reviewing the history of the preference. The subject preference was enacted in 1970, *See* 1970 Maryland Laws, ch. 271. Codified at Maryland Code (1957, 1967 Repl.Vol., 1970 Cum.Supp.) Art. 30 § 6A, it provided: "The State and all state-aided, owned, controlled, or managed public or quasi-public institutions and agencies shall purchase from the workshop for the blind those products and/or services not supplied by the Department of Correctional Services." At that time, as the appellee points out, the appellant supplied certain textile "products," i.e. uniforms, surgical drapes and wraps. Significantly, § 6A also required "[t]he workshop [to] send a list of products and services supplied by it to the Secretary of the Department of Budget and Fiscal Planning, and to all persons responsible for purchasing for the above mentioned institutions."

With the enactment of a unified procurement law, codified in Article 21, *See* 1980 Maryland Laws, ch. 775, Art. 30, § 6A was transferred to Article 21 § 8–202. Although substantively the same as its predecessor, rather than "products and/or services," what was required to be purchased were, consistent with the defined terms in the new law, *See* Art. 21, § 1–101(*o*) and (r), "supplies or services." The requirement that a list of supplies and services be sent to the affected institutions was retained, except that the Department of General Services was substituted for the Department of Budget and Fiscal Planning.

The next change in statutory language, resulting in the present statutory formulation, came in 1988, during Code revision, *See* 1988 Maryland Laws, ch. 48. It was during this process that "provides" was added to the statute, requiring the State to purchase supplies and services that the appellant "provides" and State Use Industries does not provide. The Revisor's note to § 14–103 advises that the provision as to the preference to Blind Industries is "new language derived without substantive change" from the prior law. *See Blevins v. Baltimore County,* 352 Md. 620, 642, 724 A.2d 22, 32 (1999), in which we stated that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." (Quoting *Duffy v. Conaway,* 295 Md. 242, 257, 455 A.2d 955 (1983)). *See In re Special Investigation No. 236,* 295 Md. 573, 576–77, 458 A.2d 75, 76 (1983) ("even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so material that the intention of the General Assembly to modify the law appears unmistakably from the language of the Code"). The provision requiring dissemination of a list of Blind Industries' supplies and services was also carried over, but in a different section, § 14–105. As revised, it provided:

"Every 6 months, Blind Industries and Services of Maryland shall:

"(1) revise the list of supplies and services that it provides; and

"(2) send the list to the Secretary of General Services and each person responsible for buying supplies or services for the State or a State aided or controlled entity."

As in the case of the preference, the Revisor's Notes to that section indicated that it was not intended as a substantive change.

This history supports the appellee's and the Circuit Court's construction of the preference. It confirms that when the preference was given, it applied only to those products and services that Blind Industries actually supplied and which the Division of Correction did not. There was absolutely no indication or suggestion in the language of the statute that the preference extended to, or was intended to cover, products and services that Blind Industries could have—had the ability to supply—, but did not, in fact, supply. In fact, the opposite is the case. By requiring the appellant to send a list of the supplies and services that it supplies or provides to the affected State agencies and entities, the Legislature clearly intended, if not manufacture, that the appellant actually supply or provide the supplies or services to which the preference relates. Had the Legislature intended the preference to apply to supplies and services that the appellant had the ability to provide, but did not then provide, it undoubtedly would have said so; the statute very easily could have included the phrase, "or may in the future provide." Indeed, that is the effect of the construction for which the appellant is arguing.

The appellant emphasizes that, if awarded the Statewide Office Supply contract, it "would simply be doing precisely what Boise [7] was doing," acting as a distributor or a retailer. There is, however, a rather significant difference. To get the contract, Boise had to submit to competitive bidding. If the appellant is correct, it is not subjected to competitive bidding. A much different situation is presented if there were no

7. Boise–Cascade Office Products, the present contract holder.

preference at issue in this case. The appellant certainly is free to broker the contract so long as it is competing competitively.

Whatever the meaning of COMAR 21.11.05.02.C. and however it applies to the case sub judice, the interpretation of the preference that the appellant urges will have, as the appellee argues, an adverse impact on the goals of the procurement laws. If the appellant is correct, then the wholesaler from whom it procures the supplies and services for delivery to the end-user will receive the benefit of the preference by not having to engage in competitive bidding, in clear contradiction, at the very least, of the spirit of the procurement law. Given the goals of that law, it is inconceivable that that could have been the Legislature's intent.

Moreover, the implications of such an interpretation are illogical and far-reaching. The appellee insightfully points out:

> "If Blind Industries' theory that any blind employment justifies giving a preference is taken to its logical conclusion, its weakness becomes even clearer. Blind Industries could employ a single blind individual to take orders from State buyers for construction services, cars, highways, bridges, or gasoline, relay the orders to an appropriate private company, and receive a preference because it 'provides,' i.e. procures, the goods or services. This interpretation is inconsistent with the purposes of the General Procurement Law set forth in SFP § 11–201, of which Blind Industries' preference is a part, to foster broad-based competition, promote integrity, and get maximum value from the State's dollars. See SFP § 11–201(b) (procurement law "shall be construed liberally and applied to promote the purposes and policies enumerated in subsection (a) of this section")...."

We hold that the § 14–103 preference does not apply in this case, where the appellant, though entitled to a preference for supplies or services it provides, does not actually or ordinarily provide the supplies and services it offers to provide

and proposes to do so by procuring them as a broker or retailer and transferring them to the purchaser.

JUDGMENT AFFIRMED, WITH COSTS.