REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2053

September Term, 2012

BALTIMORE COUNTY, MARYLAND, et al

v.

CARROLL THIERGARTNER

Matricciani,
Graeff,
Sharer, J. Frederick,
 (Retired, Specially Assigned),

JJ.

Opinion by Sharer, J.

Filed: March 26, 2014

This appeal follows the entry of a judgment in the Circuit Court for Baltimore County, after consideration of Baltimore County's request for judicial review of a decision and order of the Maryland Workers' Compensation Commission ("the Commission").

Concurrent with its petition for judicial review, the County filed a motion for summary judgment. Appellee, Carroll Thiergartner, opposed the County's petition, and filed a cross-motion for summary judgment. After a hearing, the circuit court denied the County's motion for summary judgment and granted Thiergartner's cross-motion for summary judgment.

The County presents two questions for our review which, as slightly edited, are:

1. Did the Circuit Court err, as a matter of law, in its rulings on the parties' respective motions for summary judgment?

2. Is the County entitled to a complete offset of workers' compensation benefits by operation of Md. Code Ann., Lab. & Empl. § 9-503 due to Appellee's election and receipt of payments under the County's Deferred Retirement Option Program (DROP)?[1]

For the reasons that follow, we shall affirm the circuit court's denial of the County's motion for summary judgment, and affirm the grant of appellee's motion. However, we shall remand for the purpose of recalculation of the amount by which appellee's workers' compensation benefits should be offset.

_____

[1]As we will discuss below, the relevant provisions may be found at Md. Code Ann. (2008 Repl. Vol.), § 9-503(a)(1) & (e)(1)-(2) of the Labor and Employment Article. Having provided complete citation to the relevant statutory provisions, we shall subsequently cite to the Labor and Employment Article using the abbreviation "L.E."

## Standard of Review

Our review of the trial court's grant, or denial, of a motion for summary judgment is whether the trial court was legally correct, since a trial court decides issues of law, not fact, when granting summary judgment. *Heat & Power Corp. v. Air Prods. & Chem., Inc.*, 320 Md. 584 (1990). "The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). In this case, the circuit court found no disputes of material fact; indeed, the parties agree that there are no such disputes. The factual determination having been made for us, "'we review the trial court's ruling on the law, considering the same material from the record and deciding the same legal issues as the circuit court.'" *D'Aoust v. Diamond*, 424 Md. 549, 575 (2012) (quoting *Messing v. Bank of America, N.A.*, 373 Md. 672, 684 (2003)) (further citation omitted).

## FACTS and PROCEEDINGS

Appellee, Carroll Thiergartner, prior to his retirement in September 2005, was employed as a sworn Baltimore County firefighter for 33 years. During his active employment, Thiergartner participated in the County's Deferred Retirement Option Program ("DROP"). At the time of his retirement, he opted to receive a lump-sum payment from his DROP account. In May 2010, nearly five years after he retired, Thiergartner began to develop chest pain. He sought medical attention and was diagnosed and treated as follows:

2

On May 19th of 2010 ... he was found to have a 99 percent occlusion of the left anterior descending artery. That was stented. And then two days later ... he was found to have a 99 percent occlusion of the right coronary artery and that was also stented. He was released from the hospital the next day.

Thereafter, on February 18, 2011, Thiergartner filed a claim for workers' compensation benefits in which he asserted that his heart condition was a compensable "occupational disease" that arose from his employment with the County. Following a hearing, the Commission issued its order, on February 14, 2012, finding that the effects of Thiergartner's coronary artery disease amounted to a 25 percent loss of the industrial use of his body. As a result, the Commission awarded Thiergartner permanent partial disability benefits. The Commission explained the calculation and distribution of Thiergartner's benefits as follows:

> The claimant received DROP payment of $189,346.90 in 2005.[2] This DROP payment was a retirement benefit within LE 9-503 and is therefore subject to offset. The weekly prorated amount of this DROP payment combined with the Claimant's regular retirement benefits totals $946.15. Therefore, the available weekly benefit payable after the retirement offset is $272.03 per week (weekly salary of $1,213.80 minus retirement benefits including prorated DROP of $946.15). The employer and insurer shall pay unto the claimant compensation for permanent partial disability, at the rate of $272.03, payable weekly, beginning May 20, 2010, for a period of 125 weeks.

The County sought judicial review of the Commission's order. In its motion for summary judgment, the County conceded that, with respect to individuals who were

---

[2]During his career, Thiergartner paid into a DROP account. Upon retirement, he had the option to receive either retirement benefit payments of $946.15 per week, or, a lower weekly retirement benefit of $847.40, along with a lump sum of $189,346.90. He chose the latter.

3

employed as firefighters, under L.E. § 9-503(a)(1), "conditions of heart disease and/or hypertension" are presumed to be compensable occupational diseases arising in the course of employment. The County took no exception to the Commission's finding of a compensable condition, nor of the Commission's disability rating. The substance of the County's argument was, and is, with respect to the Commission's calculation of Thiergartner's workers' compensation award.

The County argued, correctly, that under L.E. § 9-503(e)(2), the combined total of an individual's weekly retirement and workers' compensation benefits may not exceed the weekly salary he or she received while last employed. Thus, the County contended that the Commission was incorrect in its benefit offset calculation because it did not appropriately account for the cumulative retirement benefit Thiergartner received, *i.e.*, the $189,346.90 lump sum DROP payment. It was the County's position below that the Commission's calculation of Thiergartner's maximum workers' compensation benefit only took into account his weekly pre-retirement income of $1,213.80, and the fact that, had he not chosen to accept the DROP lump sum, he would have received weekly retirement benefits of $946.15.

Applying those figures, the circuit court found that Thiergartner was eligible for a maximum workers' compensation award of $272.03 per week. The County argued its position that, as Thiergartner's compensable occupational disease allowed, by law, a maximum compensation benefit of $307 per week, the lump sum DROP payment should

4

have offset any compensation award for a total of up to 617 weeks; that is, Thiergartner's receipt of the lump sum DROP retirement benefit should have completely offset his workers' compensation award.

Thiergartner's position before the circuit court, and now, was that, because his pre-retirement weekly income was $1,213.80 and his weekly retirement benefits were $847.40, he was eligible to receive as much as $366.40 per week in workers' compensation benefits.[3] He contended that factoring the lump sum DROP payment into the workers' compensation award calculation would be improper, under the offset provision of L.E. § 9-503, because only retirement benefits which would overlap with a potential workers' compensation award may factor into the award calculation. His position was that because he received the DROP payment more than five years before the workers' compensation award, the separate sources did not overlap and so the former - the DROP - should not be applied to offset the latter - the workers compensation award. Moreover, Thiergartner asserted that the offset language in L.E. § 9-503 applied only to the "weekly total" of retirement and workers' compensation benefits and so could not apply to a one-time benefit, such as the lump sum DROP payment.

Alternatively, Thiergartner contends that if his lump sum DROP payment was to be accounted for in his workers' compensation award, the appropriate method would be to apply

[3] Thiergartner did not dispute the County's claim that, by statute, the maximum workers' compensation award for his particular compensable condition was $307 per week. He simply pointed out that when his pre-retirement weekly income was compared to his combined weekly retirement and workers' compensation benefits, the difference was $366.40.

5

the weekly retirement benefits he would have received if he had not opted for a lump sum payout, namely, the greater weekly retirement benefit of $946.15. He noted that this was the approach taken by the Commission in calculating his workers' compensation award. Lastly, Thiergartner posits that the calculation advocated by the County was not supported by any statute or case law, so the trial court was correct in its denial of the County's motion for summary judgment.

Following the hearing on the parties' motions, the circuit court issued its order, on November 19, 2012, denying the County's motion for summary judgment, granting Thiergartner's cross-motion for summary judgment, and explaining only that it was "persuaded that the approach of [the Commission] [was] correct."

Additional facts will be provided below as our analysis requires.

## DISCUSSION

On appeal, the parties' arguments are identical to those raised in their respective motions for summary judgment. The County contends that proper adjustment of Thiergartner's workers' compensation award requires accounting for the lump sum DROP payment he received, $189,346.90, by dividing that sum by the maximum weekly workers' compensation award he was eligible to receive for his compensable coronary artery disease, $307 per week, in order to arrive at the number of weeks by which his workers' compensation award should be offset. That arithmetic exercise results in a product of 617

6

weeks. Clearly, this method of calculation would provide for a complete offset of the compensation award granted, which was $272.03 per week for 125 weeks.

In contrast, Thiergartner asserts that a legally correct offset calculation would not take the lump sum DROP payment into account at all, because that payment was not made to him during a time in which he was also eligible to receive workers' compensation benefits. He maintains, alternatively, that if the lump sum must be part of the workers' compensation award offset equation, the Commission's method of making the calculation was correct, *i.e.*, by applying the greater amount of weekly retirement benefits he would have received had he not opted to take the DROP payment.

Initially, we recognize, and the parties agree, that there are no disputes regarding any of the material facts of the case. As we have laid out previously, Thiergartner's pre-retirement weekly income was $1,213.80. Upon his retirement, Thiergartner opted to receive his benefits via a lump sum payment of $189,346.90, along with subsequent weekly payments of $847.40. In so doing, he declined the benefits option which included no lump sum payment but provided for higher weekly payments in the amount of $946.15. Several years later, Thiergartner was awarded workers' compensation benefits due to his coronary artery disease, a condition first discovered **after** his retirement, and statutorily presumed to have resulted from his employment. L.E. § 9-503(a)(1). The Commission recognized that under L.E. § 9-503 the sum of his weekly workers' compensation and retirement benefits could not legally exceed his weekly pre-retirement salary. In its decision, the Commission

7

attempted to fully account for the sum of Thiergartner's retirement benefits and, applying his weekly retirement benefit of $946.15, awarded workers' compensation benefits in the amount of $272.03 per week for 125 weeks.

Given that the facts are undisputed, our sole focus shall be whether the Commission correctly applied L.E. § 9-503 in its compensation award. Labor & Employment § 9-503 provides, in pertinent part:

> **§ 9-503. Occupational disease – Presumption – Firefighters, fire fighting instructors, rescue squad members, advanced life support unit members, and police officers.**
>
> (a) *Heart disease, hypertension, and lung disease – Firefighters, fire fighting instructors, rescue squad members, and advanced life support unit members.* – A paid firefighter, paid fire fighting instructor, or sworn member of the Office of the State Fire Marshal ... is presumed to have an occupational disease that was suffered in the line of duty and is compensable under this title if:
>
> (1) the individual has heart disease, hypertension, or lung disease;
>
> (2) the heart disease, hypertension, or lung disease results in partial or total disability or death ...
>
>                                * * *
>
> (e) *Benefits in addition to retirement benefits.* – (1) Except as provided in paragraph (2) of this subsection, any paid firefighter, paid fire fighting instructor, sworn member of the Office of the State Fire Marshal ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section or the dependents of those individuals *shall receive the benefits in addition to any benefits that the individual or the dependents of the individual is entitled to receive under the retirement system* in which the individual was a participant at the time of the claim.
>
> (2) The benefits received under this title shall be adjusted so that the *weekly total of those benefits and retirement benefits does not exceed the weekly*

8

*salary that was paid to the ... firefighter*, fire fighting instructor, sworn member of the Office of the State Fire Marshal ...

(Emphasis added).

Whether retirement benefits which are not received concurrently with an individual's workers' compensation award must be used in the offset calculation provided for in L.E. § 9-503(e)(2) is an issue of first impression. Therefore, we assess the relevant provision through the lens of our oft-cited principles of statutory construction:

> In statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 419-20 (2007); *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352 (2005). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that "'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Kelly*, 397 Md. at 420; *Kane v. Bd. of Appeals of Prince George's County*, 390 Md. 145, 167 (2005). Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. *See Roskelly v. Lamone*, 396 Md. 27, 53 (2006); *So. Easton Neighborhood Assoc. v. Town of Easton*, 387 Md. 468, 495 (2005); *Smack v. Dep't of Health & Mental Hygiene*, 378 Md. 298, 305 (2003) ("[T]he statute must be given a reasonable interpretation, 'not one that is illogical or incompatible with common sense.'"). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Kelly*, 397 Md. at 419; *City of Frederick v. Pickett*, 392 Md. 411, 427 (2006); *Davis v. Slater*, 383 Md. 599, 604-05 (2004). If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose. *Kelly*, 397 Md. at 419-20; *Mayor & Town Council of Oakland v. Mountain Lake Park*, 392 Md. 301, 316 (2006); *Canaj, Inc. v. Baker & Division Phase III*, 391 Md. 374, 403 (2006).

*Barbre v. Pope*, 402 Md. 157, 172-73 (2007) (parallel citations omitted).

9

In our view, a reading of L.E. § 9-503(e)(2), in which we observe the plain meaning of its language, indicates that the statute is intended to preclude the sum of a claimant's weekly retirement and workers' compensation benefits from exceeding the weekly salary he or she earned during active employment. *See Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 84 (1996) ("[T]he clear language of [the benefit offset provision in L.E. § 9-503] negate[s] the need to look elsewhere for its meaning. The section specifically and unambiguously requires that ... workers' compensation benefits be reduced to the extent that, when combined with ... retirement benefits, the sum does not exceed [the subject individual's] weekly salary."). This goal is accomplished by capping the sum of weekly benefits at the figure of the individual's pre-retirement income. L.E. § 9-503(e)(2) ("The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter ...").

Moreover, the language employed in L.E. § 9-503(e)(2) makes obvious that the restriction contemplated by the statute can only apply to **weekly** retirement and workers' compensation benefits that are due **concurrently**. *See Blevins v. Baltimore County*, 352 Md. 620, 623-27 (1999) (holding that, under L.E. § 9-610(a),[4] an offset of benefits was not called

---

[4]L.E. § 9-610(a) is similar to L.E. § 9-503(e) in that it provides for the offset of benefits when "a covered employee of a governmental unit or a quasi-public corporation" might be eligible to receive both workers' compensation benefits and some other benefit provided by "a statute, charter, ordinance, resolution, or policy, regardless of whether part of a pension system[.]" L.E. § 9-610(a)(1).

for where workers' compensation award was for a period prior to when retirement benefits became payable). We are not convinced that the statutory mandate for adjustment of workers' compensation benefits "so that the *weekly total of those benefits* and retirement benefits does not exceed the weekly salary that was paid [to the eligible employee]" could be interpreted to limit workers' compensation awards, in light of other benefits that were not received concurrently. L.E. § 9-503(e)(2).

We contrast the wording of L.E. § 9-503(e)(2) with that of L.E. § 9-503(e)(1), which provides for workers' compensation benefits to be received in addition to "*any* benefits" the employee is entitled to receive under the retirement system. Thus, we conclude that the legislature limited the scope of L.E. § 9-503(e)(2) in comparison to the broader language of L.E. § 9-503(e)(1). The distinction is significant

On the facts before us, it cannot be said, and has not been alleged, that Thiergartner was "gaming the system" by choosing to accept a portion of his retirement benefits in a lump sum, since his election was made years before he was aware of his compensable coronary artery disease. At the time of election, he had no reason to believe he would subsequently be receiving workers' compensation benefits, the amount of which would be influenced by his choice in the distribution of his retirement benefits. Moreover, his receipt of the lump sum was an action which came at the detriment of his future weekly retirement benefit payments, lowering them by $98.75. Given that Thiergartner had no way of knowing how

11

many weekly retirement payments he would ultimately receive, accepting the lump sum was a measured risk.

We conclude that a plain reading of the benefit adjustment language of L.E. § 9-503(e)(2), that "benefits received under [the workers' compensation] title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter[,]" does not reveal it to be ambiguous. Thus, our statutory construction analysis need proceed no further. We do not see a basis for an interpretation that would allow for the accounting of any retirement benefits other than those which are to be paid weekly and concurrently with a workers' compensation award. We are unwilling to conclude that the legislature intended for L.E. § 9-503(e)(2) to allow for improvisation in the treatment of retirement benefits not clearly contemplated by the statute. *See Polomski*, 344 Md. at 84 (holding that if benefits of a type not listed in the offset provision of L.E. § 9-503 were to be affected by the statute, "that amendment must come from the General Assembly, not this Court.").

Accordingly, we hold that the circuit court did not err in finding that, as a matter of law, the County was not entitled to a full offset of Thiergartner's workers' compensation award, and in denying its motion for summary judgment.

Nevertheless, our review of the matter leads us to the conclusion that calculation of Thiergartner's workers' compensation award must be based on the weekly retirement benefit payment he actually receives, $847.40. Therefore, we shall remand this matter to the circuit

12

court with directions to remand the case to the Workers' Compensation Commission for

recalculation of Thiergartner's award.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED AS TO DENIAL OF APPELLANT'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT LIKEWISE AFFIRMED AS TO THE GRANT OF APPELLEE'S MOTION FOR SUMMARY JUDGMENT;**
>
> **CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY, WITH DIRECTION TO REMAND TO THE WORKERS' COMPENSATION COMMISSION WITH INSTRUCTIONS TO RECALCULATE APPELLEE'S WORKERS' COMPENSATION AWARD IN A MANNER CONSISTENT WITH THIS OPINION.**
>
> **COSTS ASSESSED TO BALTIMORE COUNTY.**

13