*Baltimore County Maryland, et al. v. Carroll Thiergartner*
No. 44, September Term, 2014

*Jeffrey Walters v. Baltimore County Maryland*
No. 58, September Term, 2014


**Workers' Compensation Benefits - Presumption Accorded Public Safety Employees - Offset for Retirement Benefits - Deferred Retirement Option Benefits.** The State Workers' Compensation Act includes a special presumption for public safety employees that certain medical conditions are the result of an occupational disease and are compensable under the Act. Benefits paid as a result of that presumption, however, are capped such that the weekly total of those benefits and any retirement benefits received by the individual do not exceed the individual's average weekly salary; if the total exceeds the average weekly salary, the workers' compensation benefits are reduced by the amount of the excess. One form of retirement benefits available to long-time employees of Baltimore County was the Deferred Retirement Option Program ("DROP"), under which an employee delayed retirement in return for benefits that could be received as a lump sum upon retirement or as part of an enhanced monthly retirement payment. A lump sum DROP payment must be converted to a weekly amount for purposes of the offset computation in the Workers' Compensation Act. The method adopted by the Workers' Compensation Commission in one of these cases – using the higher recurring benefits figure that would have been paid if the individual had made a different election with respect to the DROP – was a reasonable way of doing so. Maryland Code, Labor & Employment Article, §9-503; Baltimore County Code, §5-1-302.

Circuit Court for Baltimore County
*Thiergartner:*  Case No. 03-C-12-001950
*Walters:* Case Nos. 03-C-09-002702,
                           03-C-09-009329
Argued: February 10, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 44 and 58

September Term, 2014

---

BALTIMORE COUNTY, MARYLAND ET AL.

v.

CARROLL THIERGARTNER

---

JEFFREY WALTERS

V.

BALTIMORE COUNTY, MARYLAND

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by McDonald, J.

---

Filed: April 20, 2015

These cases reach us in somewhat different procedural postures, but the issue is the same in both. Both cases concern a limit that the Legislature has placed on workers' compensation benefits that a retired public safety employee may receive under a special presumption in the Maryland Workers' Compensation Act – a limit based in part on the amount of retirement benefits that the individual also receives.

A provision of the workers' compensation law creates a presumption favorable to certain categories of public safety employees. In particular, the law presumes that certain disabling medical conditions, such as heart disease, hypertension, and lung disease, are occupational diseases suffered in the line of duty and are therefore compensable under the workers' compensation law. However, the statute caps those benefits: the sum of workers' compensation benefits and a retired employee's retirement benefits may not exceed the employee's average weekly salary during employment. The formula for capping workers' compensation benefits, seemingly simple in its description, inevitably raises questions in its implementation, particularly when its components take different forms paid on different timetables.

The retirement benefits involved in these cases derive in part from an optional retirement program once offered by Baltimore County. The program was designed to encourage senior employees, otherwise eligible to retire, to remain on the job in return for enhanced retirement benefits – an enhancement that can be taken in a lump sum upon retirement or in other ways that result in higher recurring retirement payments. The two retired firefighters in these cases – Carroll Thiergartner, the Respondent in No. 44, and

Jeffrey Walters, the Appellant in No. 58[1] – participated in that program and opted to receive the enhancement as a lump sum payment upon their retirements.  Both retirees also qualified for workers' compensation benefits as a result of the special presumption for public safety employees.  The issue in both cases is how the lump sum retirement payment is to be included in the formula for capping their workers' compensation benefits.

We hold that the statute that imposes the cap on weekly workers' compensation benefits necessarily contemplates a comparison involving payments, such as salary and retirement benefits, that are paid on different time schedules and that must be converted to a weekly number to apply the statutory formula.  There is no evident reason to exclude a lump sum paid at the outset of retirement from such a conversion when applying the statutory formula.

As to the manner of including the lump sum payment in that formula, we decline to adopt the method proposed by the retirees, which would treat the lump sum differently from other retirement benefits and count it only for the particular week in which it was paid.  Nor do we adopt the method proposed by the County which, although it would convert the lump sum to a weekly figure for a period of time, would front-load that amount to offset workers' compensation benefits completely for that period.

---

[1]The two cases involve a different pair of appellations for the parties (Petitioner/Respondent v. Appellant/Appellee) because the *Thiergartner* case made a stop at the Court of Special Appeals en route to us while the *Walters* case did not. *See* Maryland Rule 8-111.

In our view, the most reasonable and accurate way to convert this portion of retirement benefits to a weekly figure would be to compute a figure for a stream of weekly amounts over the course of retirement that equates in some reasonable way to the lump sum payment. Such an approach is consistent with prior appellate decisions concerning another offset provision in the Workers' Compensation Act. The Workers' Compensation Commission adopted such a method in the *Thiergartner* case.

# I

## Background

*Workers' Compensation and Public Safety Employees*

The Maryland Workers' Compensation Act, codified at Maryland Code, Labor & Employment Article ("LE"), §9–101 *et seq.*, is designed to ensure that employees receive compensation for disabilities resulting from work-related injuries and occupational diseases. R.P. Gilbert, et al., Maryland Workers' Compensation Handbook (4th ed. 2013), §§1.03, 7.01. That law provides special consideration for public safety employees by creating a presumption that certain disabling diseases or conditions are occupational diseases suffered in the line of duty and therefore compensable under the workers' compensation law. LE §9-503.[2] Pertinent to these cases, the statute provides that a paid firefighter who suffers from

---

[2]The history of the workers' compensation law and the presumption that certain disabilities suffered by public safety employees or retirees are related to their employment is discussed in some detail in *Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 76-79, 684 A.2d 1338 (1996).

heart disease, hypertension, or lung disease that results in total or partial disability or death "is presumed to have an occupational disease that was suffered in the line of duty and is compensable under [the workers' compensation law]." LE §9-503(a).

Many firefighters who qualify for that presumption will be retired and will be receiving retirement benefits as a result of their employment as a firefighter. The statute provides for an adjustment of any workers' compensation benefits awarded to such an employee. Under that provision, the workers' compensation benefits received as a result of the presumption are to be offset in certain circumstances by retirement benefits that the individual receives.[3] In particular, the statute provides as follows:

> (1)    Except as provided in paragraph (2) of this subsection, any [firefighter] eligible for benefits under [LE §9-503(a)] shall receive the benefits in addition to any benefits that the individual ... [is] entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

> (2)    The benefits received under [the workers' compensation law] shall be adjusted so that the weekly total of

---

[3]The Workers' Compensation Act also contains a provision that offsets workers' compensation benefits by retirement benefits related to disability – a provision designed to prevent what might be considered "double dipping" as both governmental payments would relate to the same disability. *See* LE §9-610; *Blevins v. Baltimore County*, 352 Md. 620, 639-40, 724 A.2d 22 (1999); *Newman v. Subsequent Injury Fund*, 311 Md. 721, 728, 537 A.2d 274 (1988). The offset provision in LE §9-503(e)(2) is somewhat different in nature in that the offsetting retirement benefits are not necessarily related to the disability that supports the workers' compensation award. Rather, the offset in LE §9-503(e)(2) appears to be designed to moderate the fiscal effect of the generous presumption accorded to public safety employees in LE §9-503(a).

4

those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter ....

LE §9-503(e). On its face, the statutory formula appears to be a straightforward exercise that involves (1) adding two numbers (the weekly workers' compensation benefit and weekly retirement benefit), (2) comparing the result to the weekly salary earned by the firefighter during employment, and (3) if the result exceeds the weekly salary, reducing the workers' compensation benefit by the amount of the difference. But things are never so simple as they seem.

*The Baltimore County DROP Program*

Like a number of other jurisdictions, Baltimore County has included in its personnel law a provision known as the Deferred Retirement Option Program ("DROP"). The DROP is designed to retain certain categories of long-time County employees who might otherwise choose to retire by offering them the option of an enhanced retirement benefit if an employee defers retirement and remains an active County employee.

Under the DROP related to firefighters, a County firefighter who is eligible to retire and has the requisite years of service may elect to participate in the DROP. The employee then continues to work for the County as an active employee while deferring certain compensation related to the forgone pension payments and ongoing employee pension contributions in a special account. Baltimore County Code, §5-1-302(b)-(e). In particular, when the employee elects to participate in the DROP, an account is created for the employee that includes (1) an amount equivalent to a year's worth of pension payments for each year

5

that the employee continues to work for the County after the employee becomes eligible for retirement (the "DROP period"); (2) the retirement contributions made by the employee during the DROP period; and (3) interest earned on the amounts in the DROP account. Baltimore County Code, §5-1-302(e).

When the period of deferred retirement comes to an end and the employee actually retires, the employee has a choice as to how to receive the amount in the DROP account. The employee can elect to receive the accumulated amount in the DROP account as a lump sum or roll it over into an eligible retirement plan and thereby enhance future retirement benefits. Baltimore County Code, §5-1-302(f).

*Thiergartner*

Mr. Thiergartner was employed as a sworn firefighter with Baltimore County for 33 years. He retired in September 2005. At the time of his retirement, Mr. Thiergartner elected to receive a lump sum from his DROP account. He received a payment of $189,346.90 within 30 days of that election. He also began to receive a monthly retirement allowance of $3,672.07. Converted to a weekly figure, that amount is $847.40 per week.

In February 2011, more than five years after his retirement, Mr. Thiergartner filed a workers' compensation claim for heart disease related to his employment. In his claim, he identified the date of disablement as May 19, 2010.

In June 2011, applying the presumption in LE §9-503(a), the Workers' Compensation Commission found that Mr. Thiergartner had sustained an occupational disease – coronary

6

artery disease – related to his employment as a firefighter and agreed that the first date of disablement was May 19, 2010. It found that he was entitled to a maximum weekly benefit for a permanent partial disability of $307 for 125 weeks. The Commission order identified his "average weekly wage" as $1,213.80.

The Commission also computed the offset under LE §9-503(e)(2). As described above, in order to apply the offset, one must compare Mr. Thiergartner's combined retirement and workers' compensation benefits, expressed as an aggregate weekly amount, with his "weekly salary." Setting aside the lump sum DROP payment for the moment, Mr. Thiergartner's ongoing pension payment, converted from a monthly figure to a weekly figure, is $847.40; his maximum weekly workers' compensation benefit under the Commission's award is $307.00. Added together, they amount to $1,154.40 per week. Assuming that "weekly salary" for purposes of LE §9-503(e) is equivalent to "average weekly wage,"[4] there would be no offset, as the combined figure ($1,154.40) does not exceed

---

[4]There is no definition of the phrase "weekly salary" in the statute. In computing the offset in these cases, the Commission apparently assumed that "weekly salary" is equivalent to "average weekly wage," a phrase defined in the Workers' Compensation Act. *See* LE §9-602. When the offset formula was recodified in 1991 as part of the new Labor & Employment Article, the code revisors noted, for consideration by the General Assembly that the statute did not specify the period of time that should be used for determining the "weekly salary" of the individual. Chapter 8, §2, Laws of Maryland 1991 at pp. 850-51. The General Assembly has not yet responded to the revisors' suggestion.

In the Circuit Court in the *Walters* case, the County argued that the phrase "weekly salary" is susceptible to a different interpretation than "average weekly wage," which resulted, at least in that case, in a lower figure. *See* footnote 6 below. The County did not include that issue in its petitions for *certiorari* in these cases and the merits of the

7

$1,213.80. Whether there should be an offset under the statutory formula will depend on whether – and how – the DROP benefit is included in this comparison.

In February 2012, the Commission held that the DROP benefit should be included in the computation on a pro-rated basis. To come up with a pro-rated figure, the Commission looked to the higher monthly retirement benefit that Mr. Thiergartner would have received if he had not elected to receive the DROP benefit as a lump sum payment. That amount, converted to a weekly figure, was $946.15.[5] Applying the statutory cap, the Commission set the weekly payment of workers' compensation benefits, after what amounted to a partial offset, as $272.03 for a period of 125 weeks.

The County sought judicial review of the Commission's decision in the Circuit Court for Baltimore County. The County did not challenge the Commission's conclusion that Mr. Thiergartner was entitled to benefits as a result of the statutory presumption, but excepted to its computation of the offset. Following a hearing on the parties' cross motions for summary judgment, that court granted Mr. Thiergartner's motion, denied the County's motion, and affirmed the Commission's decision.

---

Commission's use of the average weekly wage figure is not before us.

[5]There is some discrepancy in the record before us as to the origin of that figure. At the hearing in the Circuit Court and in his brief before us, Mr. Thiergartner's counsel stated that the figure was based on the monthly benefit that Mr. Thiergartner would have received if he had elected to take the DROP benefit as an enhanced monthly retirement benefit instead of as a lump sum. Before us, the County's counsel stated that it was based on the monthly benefit Mr. Thiergartner would have received if he had never participated in the DROP. We need not resolve this discrepancy for purposes of this opinion other than to note that the former method would appear to be a more precise way of pro-rating the DROP payment.

8

The County appealed the decision to the Court of Special Appeals. The intermediate appellate court affirmed the judgment of the Circuit Court in favor of Mr. Thiergartner, but ordered that the case be remanded to the Commission to recalculate the monthly benefit in a way that eliminated any offset. 216 Md. App. 560, 88 A.3d 844 (2014). It held that, because the offset formula in LE §9-503(e) referred to a "weekly total" of retirement and workers' compensation benefits, there was no occasion for factoring in the lump sum DROP payment that Mr. Thiergartner had received at the outset of his retirement well before he was awarded any workers' compensation benefits.

We granted the County's petition for a writ of *certiorari* to consider whether the lump sum DROP payment should be factored into the computation required by LE §9-503(e)(2) and, if so, how.

*Walters*

Mr. Walters' case began earlier than Mr. Thiergartner's case, but arrived at our Court later. Like Mr. Thiergartner, Mr. Walters was a firefighter with Baltimore County for more than 30 years. He retired in June 2006. Mr. Walters had participated in the DROP and, upon retirement, elected to receive a lump sum in the amount of $146,959.90. He also began to receive monthly retirement benefits of $3,745.00. Converted to a weekly figure, the retirement benefits amount to $846.23 per week. (The record does not indicate what his monthly retirement benefit – or its weekly equivalent – would have been, if he had elected

9

to take the DROP benefit as an enhanced monthly retirement payment instead of as a lump sum).

Two years after his retirement, Mr. Walters had a heart attack and was diagnosed as having heart disease. In July 2008, Mr. Walters filed a claim for workers' compensation benefits. The County contested the claim. In February 2009, the Commission awarded Mr. Walters permanent partial disability benefits of $685 per week for 333 weeks. In order to determine the offset under LE §9-503(e)(2), it determined that his average weekly wage was $1,282.00 and converted his monthly retirement benefits to $864.23 per week. This resulted in a partial offset that reduced Mr. Walters' workers' compensation benefit to approximately $417 per week.

Unlike Mr. Thiergartner's case – which would not come before the Commission until two years later – the County initially did not ask the Commission to include the DROP lump sum payment in its computation of the offset amount and the Commission's order made no reference to the DROP payment.

The County later sought judicial review of the Commission's award in the Circuit Court for Baltimore County, arguing that there should be an offset for the DROP lump sum, and also asked the Commission to modify its order for the same reason. In the meantime, it did not pay any workers' compensation benefits to Mr. Walters, apparently on the theory (1) that the offset provision in LE §9-503(e)(2) was effective as a matter of law, even if not included in the Commission's order, and (2) that Mr. Walters' workers' compensation

10

benefits should be offset dollar for dollar by the lump sum DROP payment until the amount of the offsets equaled the amount of the lump sum – a time that, given the figures involved, would be considerably in the future.[6] There followed litigation before the Commission, the Circuit Court, and the Court of Special Appeals in which Mr. Walters sought to compel the County to pay the Commission's award while the County pursued judicial review of the award. It resulted in the intermediate appellate court dismissing the County's appeal and remanding to the Circuit Court to conduct a hearing "on the role of the DROP funds, if any, in the calculation of the offset."

Before the Circuit Court, Mr. Walters won the battle – the court ordered the County to comply with the Commission order while the matter was under judicial review – but lost the war. The Circuit Court eventually sided with the County on its interpretation of the offset provision and, in a written opinion issued in July 2011, ordered that the lump sum be applied to offset workers' compensation benefits until the full amount of the DROP payment has been credited against the workers' compensation benefits, a period that it computed to be 352 weeks.

---

[6]The County subtracted the weekly retirement benefit figure from the average weekly wage found by the Commission to derive a "gap" of $417. Dividing that amount into the lump sum DROP payment received by Mr. Walters, the County argued that it was entitled to offset any workers' compensation benefits up to $417 for 352.42 weeks – nearly seven years. (The County also urged that a lower figure be used for "average weekly salary" which would result in a "gap" of $190.36. When the County's method of computing the offset was used with this figure, the complete offset of workers' compensation benefits would last 772 weeks – nearly 15 years).

11

Mr. Walters appealed that decision. After briefs had been filed, but before argument was held in the Court of Special Appeals, the County filed a petition for *certiorari* and suggested that we hear the case together with the *Thiergartner* case in the interest of judicial economy. Mr. Walters, who is represented by the same counsel as Mr. Thiergartner, did not oppose the petition. We granted the petition and accepted the County's suggestion that we consider the cases together.

## II

## Discussion

There is no dispute as to the underlying facts in either of these cases. The result in both cases turns on a question of law: Is a lump sum DROP payment a retirement benefit that is to be offset against workers' compensation benefits pursuant to LE §9-503(e)(2) and, if so, how?

### *Standard of Review*

In a judicial proceeding to review an award of the Commission, the decision of the Commission is "presumed to be prima facie correct." LE §9-745(b)(1). A court may reverse a Commission decision only if the court finds that the Commission's action was based on an erroneous construction of the facts or law. *Frank v. Baltimore County*, 284 Md. 655, 658, 399 A.2d 250 (1979); LE §9-745(c)(3). As indicated above, the facts are undisputed and the issue is purely one of law.

12

Because we are dealing with a question of law, we accord no special deference to the decisions of the Circuit Court or the Court of Special Appeals. Of course, as in any case where another court has given thoughtful consideration of the legal issue at stake, this does not prevent us from taking advantage of the reasoning and analysis of the courts that have considered the same issue that is before us. *Sturdivant v. Department of Health & Mental Hygiene*, 436 Md. 584, 587-88, 84 A.3d 83 (2014).

***Whether the Lump Sum DROP Payment Should be Included in the Offset Computation***

There can be no dispute that the DROP payment is a retirement benefit for purposes of LE §9-503(e)(2). *See Polomski*, 344 Md. at 82 (construing "retirement benefits" referenced in statute broadly to "make no distinction between [those] accruing by reason of age and service versus those accruing as the result of a disability"); *cf. Dennis v. Fire & Police Employees' Retirement System*, 390 Md. 639, 651, 890 A.2d 737 (2006) (DROP payments are pension benefits for purposes of qualified domestic relations order). Nor does there appear to be any dispute that the lump sum DROP payment must be accounted for in some way in the formula set forth in LE §9-503(e)(2).[7]

---

[7]Counsel for Mr. Thiergartner and Mr. Walters has cited a provision of the County Code that provides that benefits from a deferred compensation program do not "effect a reduction of the amount of any ... other benefit provided by law." Baltimore County Code, §5-2-105. It is not entirely clear that this provision applies to the DROP, which appears in a different title of Article 5 of the County Code. In any event, State law clearly provides for an offset in LE §9-503(e)(2) and counsel for the retirees does not argue that the County Code provision would prevail over the State statute.

13

***How the Lump sum DROP Payment Should be Included in the Offset Computation***

As noted above, the offset provision in LE §9-503(e)(2) provides simply that "the benefits received [under the workers' compensation law] shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter ...." The statutory offset formula thus contemplates a comparison of a retiree's "weekly salary" with the workers' compensation award (which is typically expressed as a weekly amount) and retirement benefits which, for purposes of the comparison, must be expressed as a weekly figure. This means that any retirement benefit payment not paid on a weekly basis – which is likely true for most, if not all, retirement payments – must be converted to a weekly figure for this formula. The statute does not explicitly state how to do this. What legislative history exists is also silent on this question.[8]

---

[8]The presumption favoring certain firefighters was originally added to the workers' compensation law in 1971 prior to the time when the General Assembly retained legislative background materials pertaining to individual bills. Chapter 695, Laws of Maryland 1971, *enacting* Maryland Code, Article 101, §64A. As originally enacted, that section provided that the workers' compensation benefits that a firefighter received with the benefit of the presumption would be "in addition to such benefits as he may be entitled to under the retirement system in which said firefighter was a participant at the time of his claim." It went on to provide that the workers' compensation benefits were to be adjusted so that "the total of all weekly benefits" would not exceed the weekly salary of the firefighter. Although the statute was tweaked in a number of respects over subsequent years, the language defining the offset formula remained intact until the provision was recodified in the new Labor and Employment Article in 1991. At that time, the code revisors stated that the current statutory language was derived without substantive change from the original language. Chapter 8, §2, Laws of Maryland 1991 at pp. 850-51.

A case concerning another offset provision of the Workers' Compensation Act provides some guidance. *See Blevins v. Baltimore County,* 352 Md. 620, 724 A.2d 22 (1999). *Blevins* concerned an offset provision, codified at LE §9-610, that is designed to avoid duplicative disability payments to government employees and retirees.[9] It states that, if a governmental employer provides a benefit to an employee that exceeds the employer's obligation to pay workers' compensation benefits, that payment offsets the employer's obligation to pay workers' compensation benefits. This Court held that a workers' compensation benefit awarded for a period *preceding* the employee's disability retirement was not a duplicate benefit that would be offset by the employee's subsequent disability retirement benefit, even though the worker's compensation benefit was paid in a lump sum after retirement. 352 Md. at 627. Thus, *Blevins* held that, for purposes of computing the offset in LE §9-610, a lump sum benefits payment should be attributed to the period to which the benefits related, as opposed to the period during which the lump sum happened to be paid.

Returning to the question before us: how should the DROP lump sum payment be converted to a weekly figure that reflects the entire period of the individual's retirement? Three possibilities have been proposed in these cases. For convenience, we shall refer to them as the Retiree Proposal, the County Proposal, and the Commission Approach.[10]

---

[9]See footnote 3 above.

[10]In what is perhaps an indication that this issue is not a straightforward one, each of the courts below chose a different option. In particular, the Court of Special Appeals

15

*(1)    Retiree Proposal:  Include the lump sum in the formula only for the week in which it was paid and not for any subsequent weeks*

Before the Commission and in the Circuit Court, counsel for Mr. Thiergartner and Mr. Walters argued that a lump sum DROP payment should be part of the offset computation only for the particular week in which it is paid.[11]  This would have the effect of wiping out any workers' compensation benefits paid for that week, but the DROP payment would drop out of the computation for all subsequent weeks.  In both of these cases, the retirees received the lump sum long before they even applied for workers' compensation benefits.  The DROP payment would therefore not be included in the offset computation in these cases.

The Court of Special Appeals adopted this approach in the *Thiergartner* case.  In particular, it interpreted the statutory language to mean that "the restriction contemplated by the statute can only apply to **weekly** retirement and workers' compensation benefits that are due **concurrently**."  216 Md. App. at 570 (boldface in original).  It essentially held that, because LE §9-503(e)(2) involves a comparison of weekly benefits with weekly salary and because the lump sum DROP payment was not a "weekly" payment, it should not be included in the formula under the plain language of the statute.  *Id.* at 571 ("We do not see a basis for an interpretation that would allow for the accounting of any retirement benefits other than

adopted the Retiree Proposal in the *Thiergartner* case, the  Circuit Court in the *Walters* case adopted the County Proposal, and the Circuit Court in the *Thiergartner* case affirmed the Commission Approach.

[11] As a fallback position, counsel also argued that the Commission Approach was superior to the County Proposal.

16

those which are to be paid weekly and concurrently with a workers' compensation award").

The problem with that conclusion is that there are few, if any, retirement benefits paid on a weekly basis. Indeed, the record in these cases indicates that the ongoing retirement benefit payments for both Mr. Thiergartner and Mr. Walters are made on a *monthly* basis.[12] Taken to its logical conclusion, construing the offset to apply only to concurrent "weekly" payments would mean that virtually no retirement benefits would ever be included in the offset computation, with the likely result that there would never be any offset for any public safety retiree who benefits from the presumption in LE §9-503. If the offset is keyed to the particular week in which a retirement benefit is paid, the offset would be applied in the one week of the month in which monthly retirement benefits are paid and not applied in the other weeks of the month. This would essentially render LE §9-503(e)(2) completely ineffective or unwieldy, contrary to a basic canon of statutory construction.[13]

In our view, the use of the term "weekly" in the statute does not restrict the type of retirement benefits to be taken into account by the frequency of payment. Rather, the statute refers to the "weekly total" of retirement benefits and workers' compensation benefits in

---

[12]Retirement benefits are typically paid on a monthly basis. According to the frequently asked questions page of the website for the Baltimore County retirement system, benefits are paid by direct deposit to a retiree's bank account at the end of each month. *See* <http://www.baltimorecountymd.gov/Agencies/budfin/retirementfaq.html#retirepaid>. The same schedule is followed by the Maryland State Retirement and Pension System. *See* <http://www.sra.state.md.us/Participants/Retired/Resources/PaymentDates.aspx>.

[13]*See, e.g., Maryland Dept. of State Police v. Maryland State Conference of NAACP Branches*, 430 Md. 179, 196, 59 A.3d 1037 (2013); *Fisher v. Eastern Correctional Inst.*, 425 Md. 699, 706, 43 A.3d 338 (2012).

17

order to provide a sensible formula that includes workers' compensation benefits – which *are* expressed as weekly dollar figure and which are the payment that will potentially be affected by the offset. Retirement benefits, whether paid monthly or bi-weekly or on some other timetable, must be converted to a weekly figure in order to be combined with workers' compensation benefits for one side of the statutory formula.[14] *See, e.g., Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 73, 684 A.2d 1338 (1996) (converting bi-weekly retirement benefit to weekly figure in computing potential offset). Similarly, the employee's salary during employment – which also was likely expressed as an annual amount and paid on a monthly or bi-weekly basis – must be converted to a weekly figure for the other side of the formula.

Thus, the reference to the "weekly total" of retirement benefits and workers' compensation benefits is not a limitation on what retirement benefits to include – *i.e.*, only those paid weekly – but rather a direction on how to include retirement benefits in the computation – *i.e.*, express the retirement benefits as a weekly amount so that the statutory comparison can be made. There is no obvious reason why the DROP lump sum payment, if it is part of the employee's "retirement benefits," should not be converted to a weekly figure, just as other portions of the employee's "retirement benefits" and the employee's salary are.

---

[14]The Court of Special Appeals implicitly accepted this proposition as it used a figure derived from converting Mr. Thiergartner's monthly retirement benefit to a weekly figure in computing the offset. 216 Md. App. at 572.

Accordingly, the Retiree Proposal is a strained construction of the statute and is inconsistent with the treatment of other payments used in the formula that are not typically expressed as a weekly figure or paid on a weekly basis.

(2)     *County Proposal:  Divide the lump sum by whatever weekly amount of workers' compensation benefits are awarded and offset those benefits in full for however many weeks it takes*

The County Proposal would convert the DROP lump sum into a weekly figure, but the method of conversion appears inconsistent with the principle we derive from *Blevins*. The County proposes that the lump sum be offset as a weekly amount equal to whatever the weekly workers' compensation benefit of the retiree happens to be (after any offset based on the monthly retirement payment) – an approach that completely offsets the workers' compensation benefits for a significant period of time, after which the DROP lump sum would not figure in the computation at all.  As a practical matter, in both of the cases before us, the offset would negate all or nearly all of the workers' compensation award.

For example, in Mr. Thiergartner's case, the County would divide the lump sum payment of $189,346.90 by the maximum weekly workers' compensation award that Mr. Thiergartner could receive – $307 – to come up with the number of weeks (617) for which the workers' compensation benefits would be completely offset. Perhaps unsurprisingly, this

19

appears to maximize the offset for the County and would completely eliminate the worker's compensation award.[15]

In Mr. Walters' case, the County Proposal would divide the lump sum payment of $146, 959.90 by the maximum weekly workers' compensation benefit that Mr. Walters could receive (after the partial offset for the monthly retirement payment) – $417 – to come up with the number of weeks (352) for which workers' compensation benefits would be completely offset.  At the conclusion of that period, there would no offset at all.

It is difficult to comprehend the rationale underlying the County Proposal.  Although the County promotes it as a method of pro-rating the lump sum for offset purposes, it appears to be designed primarily to minimize the workers' compensation benefit rather than spread the lump sum over the period of retirement in some logical and fair manner.  In the two cases before us, Mr. Thiergartner received a substantially greater lump sum payment than Mr. Walters, but the County would "pro-rate" Mr. Thiergartner's lump sum at a much lower rate ($307 per week) than Mr. Walters' lump sum ($417 per week).  Perhaps this would make sense if Mr. Thiergartner had a much longer life expectancy – *i.e.*, the higher lump sum would be pro-rated at a lower rate because it was being spread over a longer period of time.

[15]As part of its argument that this was an appropriately "pro-rated" figure, the County appeared to suggest at oral argument that its proposal would also involve reducing the potential offset attributable to the lump sum payment by $307 per week from the date of payment of the lump sum – even before the date of disablement.  Even though that period was nearly five years in duration, the end result would still be a complete offset of Mr. Thiergartner's workers' compensation award.

20

But that is not the basis for the different rates by which the County would pro-rate the lump sums. The rate is based solely on the amount of the particular retiree's workers' compensation award – a figure quite independent of the retirement benefits or expected length of retirement.[16] This is not a consistent way of attributing the lump sum DROP payment to the period to which it relates – the retiree's retirement.

(3)     *Commission Approach: Devise a way to spread the value of the lump sum over the period for which retirement benefits would be paid*

The Commission approach would pro-rate the DROP lump sum payment by a method independent of the amount of the worker's compensation award. In *Thiergartner*, at the time of the initial award by the Commission, the County raised the question of how the lump sum DROP payment should be included in the offset computation. In response, the Commission recognized that some accounting should be made for the portion of Mr. Thiergartner's retirement benefits represented by the lump sum DROP payment.[17] As recounted above, the

---

[16]In arguing in favor of its proposal, the County has suggested that the DROP program is expensive and that the retirees are receiving a windfall of some kind. (The County discontinued the program for new employees in 2007). Whether the DROP program was wise policy is not before us and is not our call. But there can be no question that those who authorized and created it anticipated that it would cost the County something more than normal retirement. In essence, the County was offering enhanced retirement benefits to experienced employees in order to retain them in its active work force. Whether those employees performed better than their replacements would have, whether the costs associated with replacing them earlier and paying retirement benefits earlier would have exceeded the costs of the DROP program, and whether the citizens of Baltimore County experienced better or worse public services as a result of the program involve economic assessments beyond our expertise. In any event, such an assessment is irrelevant to the legal question before us.

[17]As noted earlier, the County did not ask the Commission to include the DROP lump sum payment in its order in the *Walters* case and the Circuit Court ultimately decided the

21

Commission sought to convert the lump sum to a weekly figure by reference to the higher monthly retirement benefit Mr. Thiergartner would have received, had he not elected the lump sum option.

The Court of Special Appeals has affirmed a similar approach by the Commission in applying the offset provision in LE §9-610 of the Workers' Compensation Act. *Garrett v. Board of Education,* 94 Md. App. 169, 616 A.2d 446 (1992). As noted above, that statute also concerns an offset of workers' compensation benefits by retirement benefits. In *Garrett*, the retiree elected an option that involved a lower monthly retirement payment but with a future survivor benefit. The Court of Special Appeals held that the appropriate figure to use for the offset computation was an "actuarially equal" figure – derived from an alternative option under the retirement plan – that expressed the retirement benefit as a recurring payment during the period of the retiree's retirement.

Similarly, in these cases, the lump sum DROP payment is simply one option that an employee can pick to receive the enhanced retirement benefit provided by the DROP; the alternative to the lump sum would be a higher monthly benefit payment in the future. The lump sum is thus a benefit payment that relates to the entirety of the employee's retirement and not simply to the particular date on which it happens to be paid or to the period over which workers' compensation benefits are to be paid.

---

issue without a prior Commission decision on the issue.

While the Commission's approach in *Thiergartner* represented the view of a single commissioner who stated a conclusion without a detailed analysis, in our estimate it is superior to either the Retiree Proposal or the County Proposal in that it converts the lump sum to a weekly figure and does so in a way that relates the lump sum to the entire period of retirement. This Court does not function as the chief actuary or chief economist under the Workers' Compensation Act and we do not hold that the Commission Approach is the only way to convert a lump sum retirement payment into a weekly figure for purposes of this statute. There may be other reasonable ways, consistent with the statute and the principle set forth in *Blevins* to do so. But any such method adopted by the Commission should comply with the principles set forth in this opinion.

## III

### Conclusion

As is sometimes the case in statutory construction, the Legislature's enactment provides clear direction only up to a point, after which the court must earn its keep. Here, the offset provision in LE §9-503(e)(2) clearly requires a comparison involving retirement benefits paid to a retiree without any exception based on the payment timetable of the benefits and thus includes a lump sum DROP payment. The statute also necessarily contemplates the conversion of such payments to a weekly figure for purposes of the offset computation. Under the principle stated in *Blevins*, any conversion must pro-rate the lump sum payment over the entire period of retirement to which it relates. But the statute provides

23

no direction on the method of conversion.  The approach adopted by the Commission in

*Thiergartner* – looking to what the retirement system would have paid on a recurring basis

under an alternate option – is one reasonable way to do so.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IN NO. 44 VACATED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IN NO. 58 VACATED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**